2014 CO 40

**Samuel ROBINSON and Cheri Robinson, Petitioners**

v.

**Stephen LEGRO and Renee Legro, Respondents**

**Supreme Court Case No. 12SC1002**

Supreme Court of Colorado.

May 27, 2014

Attorneys for Petitioners: Campbell Latiolais & Averbach, LLC, Michael O. Frazier, Denver, Colorado

Attorneys for Respondents: Bloch & Chapleau, LLC, Joseph D. Bloch, Trenton J. Ongert, Denver, Colorado

Attorneys for Amici Curiae: Holsinger Law, LLC, Kent Holsinger, Jack Silver, Alyson Meyer Gould, Denver, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 When a bicyclist in Eagle County was attacked by two ranch dogs working to protect their sheep, reporters covering the incident billed it as an inevitable clash between ranchers and recreation enthusiasts.[1] The bicyclist and the dogs encountered each other because the federally owned land on which the attack took place was subject to both a sheep grazing permit and a recreational use permit. Colorado's dog bite statute, section 13–21–124, C.R.S. (2013), governs "civil actions against dog owners" and imposes strict liability on a dog owner whose dog causes serious bodily injury or death unless at least one of six exemptions applies. The ranchers here seek to invoke the "working dog" exemption in section 13–21–124(5)(f) because their dogs were predator control dogs. Our task is to construe the phrase "on the property of or under the control of the dog's owner" within this exemption.[2]

¶ 2 The court of appeals interpreted this phrase to require that the dogs were working as predator control dogs on the dog owner's property or on property under the dog owner's control. See Robinson v. Legro, 2012 COA 182, ¶ 34, 328 P.3d 238, 2012 WL 5266059. We disagree with this interpreta-

---

1. The record in this case fills almost 3,000 pages and includes extensive newspaper coverage about the attack, which was the subject of local and national media attention.

2. We granted certiorari to review the following issue, which we reframed for clarity:
   Whether the court of appeals erred in holding that the working dog exemption to section 13–

21–124, C.R.S. (2012), applies only when a bite occurs on a dog owner's property or property under his or her control, and that "control" of property exists only if one has the right to exclude others from it.
As explained below, our resolution of the first part of this question renders the second part of this question moot.

tion. We instead hold that the working dog exemption applies when a bite occurs on the dog owner's property or when the dog is working under the control of the dog owner. Our holding stems from the plain language of section 13–21–124(5)(f), as well as its statutory context.

## I. Facts and Procedural History

¶ 3 Petitioners Samuel and Cheri Robinson are sheep ranchers who hold a "Term Grazing Permit" issued by the United States Forest Service.[3] The permit allows the Robinsons to graze a certain number of sheep on federal land within the White River National Forest in Eagle County for a period of ten years, at which time they must reapply for the permit. The Robinsons owned several Great Pyrenees dogs to protect their sheep from predators. Predator control dogs bond with and protect livestock by patrolling the grazing area, alerting the livestock to potential threats such as coyotes and bears, and chasing predators away as necessary.

¶ 4 Respondent Renee Legro was attacked on a public road by two of the Robinsons' dogs, Tiny and Pastor, while participating in a mountain bike race sponsored by the Vail Recreation District. The road is located on land that both the Robinsons and the Vail Recreation District were entitled, by permit, to access.[4] Ms. Legro sustained serious injuries during the attack. Neither the Robinsons nor their employees were near the scene. The Robinsons' shepherd "was about a little over a mile away from the area of the incident," "down by the river, trying to get the sheep to move along," at the time of the attack; he did not hear about the incident until the next day. Campers intervened to help Ms. Legro.

¶ 5 Ms. Legro and her husband, respondent Stephen Legro, filed a lawsuit against the Robinsons in Eagle County District Court. They alleged claims of negligence, negligence per se, and loss of consortium. They also brought a strict liability claim under the dog bite statute, section 13–21–124.

¶ 6 The Robinsons filed a motion for summary judgment, arguing that: (1) the Colorado Premises Liability Act ("PLA"), section 13–21–115, C.R.S. (2013), preempts the Legros' common law claims; and (2) they are immune from strict liability under the working dog exemption to the dog bite statute. The district court granted the motion. First, the court determined that the PLA preempts the Legros' common law claims because the Robinsons' grazing privileges qualified them as "landowners"[5] under the PLA; consequently, it dismissed those claims. Second, while the court assumed that the PLA does not preempt a claim under the dog bite statute, it nonetheless dismissed the Legros' strict liability claim based on the working dog exemption. It concluded that a lessor of land for ranching purposes qualifies for exemption from strict liability pursuant to section 13–21–124(5)(f) and that, because the Robinsons owned the dogs and the dogs were working as predator control dogs at the time

---

**3.** The Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701–43, the Public Rangelands Improvement Act of 1978, 43 U.S.C. §§ 1901–08, and the Taylor Grazing Act of 1934, 43 U.S.C. §§ 315-16o, along with their respective implementing regulations, jointly govern the issuance, by the Bureau of Land Management of the Department of the Interior ("BLM") and the United States Forest Service of the Department of Agriculture, of leases, licenses, and permits for grazing domestic livestock on public lands. *See* 5 West's Fed. Admin. Prac. § 6103 (2013). We observe that both the district court and the Robinsons referred to the Robinsons' grazing permit as a "lease." Permits and leases are distinct types of interests and are regulated differently under these federal statutes and regulations. According to the express terms of the document, the privileges conveyed to the Robinsons by their Forest Service permit are access and grazing

rights in federally owned lands, not a leasehold estate.

**4.** The Vail Recreation District obtained a special use permit from the Forest Service for periodic use of the road for races within the forest; it expressly provided that it was "a license for the use of federally owned land" and was "subject to all valid existing rights and claims outstanding in third parties." One such third party was the Robinsons, with their term grazing permit.

**5.** The PLA broadly defines "landowner" to include, "without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13–21–115(1).

of the incident, the Robinsons satisfied all of the requirements of the exemption.

¶ 7 On appeal, the court of appeals affirmed the summary judgment order in part and reversed it in part. *Robinson,* ¶ 1. With respect to the Legros' common law claims, the court agreed that they were preempted because the Robinsons are "landowners" under the PLA, and the PLA is the exclusive statute governing tort actions for injuries occurring on "landowner" property. *Id.* at ¶¶ 18, 20.[6] With respect to the strict liability claim under the dog bite statute, the court examined the relationship between the PLA and the dog bite statute and concluded that both statutes may be given effect in this case if, on remand, the Legros seek to amend their complaint by adding a PLA claim.[7] *Id.* at ¶¶ 25–27. The court of appeals then disagreed with the district court's conclusion that the working dog exemption applied to the Robinsons, reversed the dismissal of the Legros' strict liability claim based on the record before it, and remanded for further proceedings. *Id.* at ¶ 44.

¶ 8 The court of appeals stated that "whether the property was under the Robinsons' 'control' owing to their grazing activities" was "the dispositive issue" for whether the subsection (5)(f) exemption applies to the Robinsons. *Id.* at ¶ 29. The court rejected the interpretation that "under the control of" relates to control of the dog, not control of the property "because it would be illogical to conclude that the General Assembly intended to exclude from liability the owner of a dog that bites a person when the dog is under the owner's control." *Id.* at ¶ 32 n. 3. The court then defined "control" in the context of property to mean, at a minimum, "sufficient control over the property such that a dog owner

has the right to exclude persons from the property." *Id.* at ¶ 38.

¶ 9 We granted certiorari to assess whether the court of appeals properly interpreted the phrase "on the property of or under the control of the dog's owner" in the working dog exemption to the dog bite statute.

## II. Standard of Review

¶ 10 We review de novo questions of statutory construction. *Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). We also review summary judgment orders de novo. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1250 (Colo. 1996).

## III. Analysis

¶ 11 For the first time, we are asked to construe the language of the working dog exemption to Colorado's dog bite statute. We begin by discussing the dog bite statute and the working dog exemption. We then apply basic canons of statutory construction and consider the context of the statutory language to interpret the phrase "on the property of or under the control of the dog's owner" because the applicability of the subsection (5)(f) exemption to the Robinsons in this case depends upon the meaning of that key phrase.

¶ 12 Enacted in 2004, section 13–21–124 imposes strict liability on a dog owner whose dog causes serious bodily injury or death to a person who is lawfully on either public or private property, unless at least one of six exemptions applies. *See* § 13–21–124(2), (5). Here, it is undisputed that the dogs that bit Ms. Legro were predator control dogs, and the Robinsons therefore seek to invoke the working dog exemption:

6. The court of appeals referenced *Vigil v. Franklin,* 103 P.3d 322, 331 (Colo.2004), in which this court held: "In Colorado's premises liability statute, the General Assembly intended to establish an exclusive specification of the duties landowners owe to those injured on their property. As such, common law landowner duties do not survive its enactment." *See Robinson,* ¶ 18.

7. Before the district court issued its summary judgment order, the Legros filed a motion for leave to amend their complaint to add a PLA claim. It appears that the district court implicit-

ly denied their motion by failing to rule on it. *See* C.R.C.P. 59(j). The court of appeals declined to address the motion to amend, but stated that the Legros could move to amend their complaint by adding a PLA claim on remand, as it would not be futile. *Robinson,* ¶ 27; *see also id.* at ¶ 45 ("Because we are remanding the case to the district court for further proceedings as to the claim under the dog bite statute, the Legros may again move to amend their complaint on remand.").

A dog owner shall not be liable to a person who suffers bodily injury, serious bodily injury, or death from being bitten by the dog . . . *[w]hile the dog is working as a hunting dog, herding dog, farm or ranch dog, or predator control dog on the property of or under the control of the dog's owner.*

§ 13–21–124(5)(f) (emphasis added).

¶ 13 To interpret the meaning of the working dog exemption, we apply long-standing principles of statutory construction. *See People v. Voth,* 2013 CO 61, ¶ 21, 312 P.3d 144, 149. Our function is to ascertain and give effect to the General Assembly's intent. *People v. Vigil,* 758 P.2d 670, 672 (Colo.1988); *see also State v. Nieto,* 993 P.2d 493, 502 (Colo.2000) (describing legislative intent as "the polestar of statutory construction").

¶ 14 When faced with a statutory construction issue, we look first to "the plain and ordinary meaning of the statutory language." *People v. Madden,* 111 P.3d 452, 457 (Colo.2005). We prefer "a commonly accepted meaning" over "a strained or forced interpretation." *Voth,* ¶ 21, 312 P.3d at 149. At the same time, "we must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988); *accord People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002) ("We presume that the General Assembly intended the entire statute to be effective and intended a just and reasonable result."); *People v. Terry,* 791 P.2d 374, 376 (Colo.1990) (emphasizing that courts must avoid "constructions that would render meaningless a part of the statute").

¶ 15 The disputed phrase within section 13–21–124(5)(f) is "on the property of or under the control of the dog's owner." Read in context, a dog owner is not strictly liable for a dog bite that occurs *"[w]hile the dog is working as a* hunting dog, herding dog, farm or ranch dog, or *predator control dog on the property of or under the control of the dog's owner."* § 13–21–124(5)(f) (emphasis added).

¶ 16 The court of appeals interpreted this phrase to refer to a dog working on either (a) the property of the dog owner *or* (b) property controlled by the dog owner. In so doing, the court construed both "of" and "under the control of" as modifying "the property." While we acknowledge that there is some facial ambiguity over whether it is the property or the dog that must be controlled by the dog owner, the more grammatically correct and logical reading of the exemption is that "on the property of" and "under the control of" modify "[w]hile the dog is working." A dog owner is therefore exempt from strict liability if a person is bitten by a predator control dog "while the dog is working" either (a) "on the property of . . . the dog's owner"; or (b) "under the control of the dog's owner." Thus, it is control of the dog, not control of the property, that is the relevant inquiry.

¶ 17 Our construction of the working dog exemption is more consistent with the plain language of the statute because it does not require adding or deleting words or punctuation. The court of appeals' interpretation would make sense only if words or punctuation were changed—for example, deleting "of or" from the exemption or adding the word "property" after the word "or."[8]

¶ 18 Furthermore, particular statutory language must be read in the context of the statute as a whole and the entire statutory scheme. *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo. 2010). Section 13–21–124(2) makes clear that the statute applies when a victim is lawfully "on *public* or private property" (emphasis added). And the working dog exemption applies to hunting dogs, herding dogs, farm or ranch dogs, and predator control

---

8. By its own admission, the court of appeals' construction is grammatically problematic and contrary to the plain language. The court of appeals explained that its interpretation could have been rendered more clear by "the addition of two commas": " 'on the property of[,] or under control of[,] the dog's owner.' " *Robinson,* ¶ 34 (brackets in original). Whether these proposed commas might have helped seems questionable to us. Regardless, when the General Assembly wants to separate a phrase with commas, it does so—even within this very statute. *See, e.g.,* § 13–21–124(1) ("having financial or property interest in, or having control or custody of, a dog"). There were none here.

dogs. Much of these dogs' "work" occurs on public lands;[9] yet, the court of appeals would allow their owners to invoke the exemption only when they could lawfully exclude others from public lands—a right that these hunters, farmers, and ranchers rarely, if ever, have on federally owned lands—practically eviscerating the exemption.

¶ 19 In our view, the working dog exemption was created to protect hunters, farmers, and ranchers engaged in activities that frequently and permissibly occur on public lands. It thus makes more sense for the exemption to apply when working dogs are working under their owners' control, thereby rewarding responsible dog-use practices. Consequently, it is not "illogical," as the court of appeals stated, "to conclude that the General Assembly intended to exclude from liability the owner of a dog that bites a person when the dog is under the owner's control." *Robinson*, ¶ 32 n. 3. Without the exemption, ranchers lawfully grazing their herds and using predator control dogs on public lands would be strictly liable for injuries caused by their dogs, no matter how responsible their practices. We presume the General Assembly did not intend such an unjust result.

¶ 20 Regardless, the General Assembly did not "exclude" such persons from liability entirely; it merely limited *strict liability* for bites that occur while working dogs are under their owners' control, while leaving open the possibility that owners would nevertheless be liable under the PLA or common law.

¶ 21 Other language in the dog bite statute is instructive as to the meaning of section 13–21–124(5)(f). First, the very definition of "dog owner" specifically references control of a dog:

"Dog owner" means a person, firm, corporation, or organization owning, possessing, harboring, keeping, having financial or property interest in, or *having control* or custody *of, a dog.*

§ 13–21–124(1)(c) (emphasis added). Second, the subsection (5)(b) exemption—which applies when the property is clearly and conspicuously marked with a "no trespassing" or "beware of dog" sign—refers simply to the "property of the dog owner" as opposed to "the property of or under the control of the dog's owner." *See* § 13–21–124(5)(b). Had the General Assembly intended for "of or under the control of" to modify "property" in subsection (5)(f), it presumably would have used the same phrasing in subsection (5)(b). It did not, thus signaling that "under the control of" modifies "working" instead. Finally, the subsection (5)(c) exemption limits strict liability for bites that occur while dogs are being used to complete socially beneficial tasks. *See* § 13–21–124(5)(c). A dog owner is exempted from strict liability if a dog is "being used by a peace officer or military personnel in the performance of [officer or personnel] duties." *See id.* Although the language of the peace officer and military personnel exemption differs from that of the working dog exemption, their purposes are similar in that the covered dogs are engaged in legitimate work alongside their owners and handlers.

¶ 22 The working dog exemption thus insulates a dog owner from strict liability if a person is bitten by a working dog while the dog is working on the property of the dog owner *or* while the dog is working under the control of the dog owner on either public or private property. Because we find the issue of the control of the dog and not the control of the property to be the relevant inquiry in this case, we determine that it is unnecessary for us to review the court of appeals' definition of dog-owner "control" of property for purposes of section 13–21–124(5)(f). We also

---

**9.** Throughout the country, over 2.75 million sheep graze on public lands. Sen. John Barrasso & Rep. Steve Pearce, Senate & Congressional Western Caucuses, *The Western Caucus Jobs Frontier* 12 (2011). Livestock grazing is one of the largest uses of federal lands, covering 614 million acres. Cynthia Nickerson et al., *Major Uses of Land in the United States* i (USDA Econ. Research Serv. 2007). Most western ranchers depend heavily on federal or state trust lands for grazing. L. Allen Torell et al., *College of Agriculture & Home Economics, Range Improvement Task Force Agricultural Experiment Station Cooperative Extension Service, The Importance of Public Lands to Livestock Production in the U.S.* 1 (1991); *see also id.* at iv (noting that during 1990, in the 11 western states, 88% of the sheep and lambs produced were from ranches with at least 5% of grazing capacity coming from BLM and Forest Service lands).

express no opinion as to what constitutes "the property of ... the dog's owner" because that issue is not within the purview of our grant of certiorari.

## IV. Conclusion

¶ 23 The court of appeals erred in interpreting section 13–21–124(5)(f) to mean that the property, rather than the dog, must be under the dog owner's control for purposes of exemption from strict liability. We hold that the working dog exemption applies when a bite occurs on the dog owner's property or when the dog is working under the control of the dog owner. Nevertheless, we affirm the court of appeals on other grounds.

¶ 24 Although the court of appeals erred in interpreting the statute, it correctly reversed the district court's summary judgment order as to the Legros' claim under the dog bite statute and remanded for further proceedings. The district court did not conduct the appropriate inquiry when it applied the working dog exemption to bar the Legros' strict liability claim, and its result was based on the faulty premise that the Robinsons were leasing the federal land in question. We therefore affirm the judgment of the court of appeals and remand to the court of appeals with directions to return this case to the district court for proceedings consistent with our opinion. The working dog exemption applies if: (a) the attack occurred on the Robinsons' property (which requires an analysis of whether the Robinsons' grazing permit confers a "property" interest); or (b) the dogs were working under the control of the Robinsons at the time of the attack. In addition, if the Legros are able to satisfy the standard for a motion for leave to amend, they may assert their PLA claim on remand, as noted by the court of appeals.

JUSTICE HOBBS concurs.

JUSTICE HOBBS, concurring.

¶ 25 I respectfully join in the Court's opinion and judgment. I write to explain my understanding that the Court is reversing the district court's summary judgment order and leaving to the district court's determination, based on the facts of this case, whether the subsection (5)(f) "working dog exemption" of section 13–21–124, C.R.S. (2013) (the "dog bite statute") applies to the Robinsons. If it does not, the Robinsons are strictly liable for Ms. Legro's injuries.

¶ 26 The Court's opinion also refers to the Legros' potential addition of a Premises Liability Act ("PLA") claim. *See* § 13–21–115, C.R.S. (2013). Though the Legros did not assert a PLA claim in their complaint, the district court applied the PLA in its summary judgment order by holding that the Robinsons' grazing "lease" qualified them as "landowners"[1] under the PLA, and thus the PLA preempted the Legros' common law claims. As the Court correctly points out, the district court erred by summarily concluding that the Robinsons' permit was a "lease," contrary to the document's facial description as a "permit," and without analyzing whether the interest, if any, conferred on the Robinsons by virtue of their grazing permit satisfies the dog bite statute's "property of the dog's owner" definition.

¶ 27 A grazing permit differs from a leasehold estate in several important respects. For example, a lease generally grants the tenant an exclusive right to possession of the whole property, which includes the right to exclude others, even the landlord. *See* Restatement (Second) of Property, Land. & Tenant § 1.2 cmt. a (1977). A grazing permit confers a revocable, non-exclusive license to access the federal lands for a limited purpose (here, grazing), subject to numerous terms and conditions; it does not confer a property interest entitling permit holders to exclude others, particularly the federal government. *See* 36 C.F.R. § 222.3(b) (2014) ("Grazing permits ... convey no right, title, or interest held by the United States in any lands or resources."); *Hage v. United States*, 51 Fed.Cl. 570, 586–87 (2002) ("[G]razing permits are merely a license to use the land rather than an irrevocable right of the per-

---

**1.** Under the PLA, the definition of "landowner" "includes, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13–21–115(1).

mit-holder … At no time have the grazing permits been recognized as a right but rather a privilege....");  U.S. Forest Serv. Manual § 2230.3(2) (Sept. 9, 2005) ("The holding of [grazing] permits is a privilege, not a property right.").

¶ 28 The district court's failure to examine the important distinctions between a lease and a permit is troubling, particularly because its ruling that the Legros' common law claims were preempted by the PLA was based on its assumption that the Robinsons' grazing "lease" qualified them as PLA "landowners."  It did not analyze whether a grazing *permit* would also satisfy the PLA "landowner" definition.  Nonetheless, the issue of whether the district court properly dismissed the Legros' common law claims is not now before us.

¶ 29 In my view, even more troubling than the lease/permit distinction is the district court's importation of the PLA "landowner" definition into the dog bite statute's "property of" the dog owner language.  *Compare* § 13–21–115(1) *with* § 13–21–124(5)(f).  The PLA's "landowner" definition is intentionally broad and may include parties with no colorable claim that the property in question is "theirs" (as in, the "property of" that third party).  For example, we have held that a "landowner" is any "person in possession of real property" or responsible for "the circumstances existing on real property," which may include renters, lessors, and even independent contractors.  *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1220 (Colo.2002).  In contrast, the dog bite statute's reference to the "property of" the dog owner requires that the dog owner have some cognizable property interest in the property in question—a far narrower definition than a PLA "landowner," which requires no actual title or interest in the property. *See id.* at 1219.

¶ 30 Accordingly, though I concur in the Court's opinion and judgment, I would also reverse two separate portions of the district court's summary judgment order:  (1) the portion holding that the Robinsons are PLA "landowners" owing to their "lease" (rather than their grazing permit); and (2) the portion subsequently importing the PLA "land-

owner" definition into the dog bite statute's "property of" the dog's owner language.