Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 26, 2016

**2016 CO 65**

**No. 14SC431, <u>Ryan Ranch Cmty. Ass'n, Inc. v. Kelley</u>—Colorado Common Interest Ownership Act—Creation, Alteration, and Termination of Common Interest Communities.**

The supreme court considers whether a developer annexed several lots into a common interest community such that the lot owners would owe assessments to the community's homeowners association.  The court concludes that the lots were not annexed because the purported annexation failed to comply with the Colorado Common Interest Ownership Act ("CCIOA"), §§ 38-33.3-101 to -402, C.R.S. (2016).  The lot owners therefore are not liable for the association's assessments.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 65

### Supreme Court Case No. 14SC431
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case Nos. 12CA2312 & 12CA2316

### Petitioner:

Ryan Ranch Community Association, Inc.,

v.

### Respondents:

John E. Kelley, Kelly D. Kelley, Rick Zimmerman, and Lora Zimmerman.

### Judgment Affirmed
*en banc*
September 26, 2016

**Attorneys for Petitioner:**
The Witt Law Firm
Jesse Howard Witt
  *Boulder, Colorado*

Austin, Peirce & Smith, P.C.
Daniel J. Sullivan
  *Aspen, Colorado*

**Attorneys for Respondents John E. Kelley and Kelly D. Kelley:**
Gordon & Rees LLP
John R. Mann
  *Denver, Colorado*

James G. Gaspich P.L.L.C.
James G. Gaspich
  *Englewood, Colorado*

**Attorneys for Respondents Rick Zimmerman and Lora Zimmerman:**
Frie, Arndt & Danborn P.C.
Paul R. Danborn
  *Arvada, Colorado*

**Attorneys for Amicus Curiae The Community Associations Institute:**
Orten Cavanagh & Holmes, LLC
Aaron Goodlock
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE COATS** joins in the majority and specially concurs, and **JUSTICE EID** and
**JUSTICE MÁRQUEZ** join in the majority and the special concurrence.
**JUSTICE BOATRIGHT** does not participate.

¶1    In this case, we must decide whether a developer inadvertently, but inescapably, annexed several individual lots into a statutory common interest community, such that the owners of those lots must pay assessments levied by the community's homeowners association. Ultimately, the answer to this question depends on how the Colorado Common Interest Ownership Act ("CCIOA" or "the Act"), §§ 38-33.3-101 to -402, C.R.S. (2016), applies to the real estate development practice of annexation.

¶2    Ryan Ranch is a residential common interest community located in Jefferson County, Colorado. In 2011, the homeowners association for Ryan Ranch filed a complaint against the owners of several lots abutting Ryan Ranch, seeking more than $75,000 in past-due assessments, penalties, and fees for maintenance services provided by the association. The owners are liable if their lots were validly annexed to Ryan Ranch under CCIOA and the community's governing instruments.

¶3    In a split decision, the court of appeals determined that the lots were not validly annexed because the purported annexation failed to comply with CCIOA. We agree and therefore affirm the judgment of the court of appeals.

## I.  Facts and Procedural History

¶4    Before 2000, the land that now constitutes Ryan Ranch was owned by the Estate of Robert L. Ryan ("the Estate") and John Kelley. In 2001, plans to develop the land commenced, and an Official Development Plan ("ODP") was recorded with the Jefferson County Clerk and Recorder. The ODP listed Kelley and the Estate as owners

and Ryan Ranch, LLC—an entity owned by Charles Ochsner[1]—as the developer. The ODP was signed by Ochsner and Kelley and contemplated that a homeowners association would be formed to maintain the development's common areas and facilities. Ochsner later purchased from Kelley and the Estate all of the land that would become Ryan Ranch.

¶5    In early 2003, Ochsner verbally agreed to sell John and Kelly Kelley ("the Kelleys")[2] nine lots out of the Ryan Ranch land at a later date, after the development was platted. Seven of these lots ("the Kelley Lots") are the subject of this case. In the summer of 2003, the Kelleys learned that Ochsner planned to sell most of the Ryan Ranch land to The Ryland Group, Inc. ("Ryland"). Ochsner and Ryland assured the Kelleys that the Kelley Lots would be excluded from the land sold to Ryland and from the homeowners association Ryland intended to form.

¶6    In September 2003, Ochsner and Ryland signed a contract providing for the sale of the Ryan Ranch land to occur in two phases. This agreement specifically excluded the Kelley Lots. The land to be conveyed in each of the two phases would later be platted as Ryan Ranch Filing 1 ("the Filing 1 Plat") and Ryan Ranch Filing 2 ("the Filing 2 Plat"), respectively.

---

[1] We refer to Charles Ochsner; Ryan Ranch, LLC; and Ochsner Properties—another entity controlled by Charles Ochsner—collectively as "Ochsner."

[2] Although this and several subsequent interactions involved only John Kelley, from here on out we refer to John alone, and to John and Kelly together, as "the Kelleys." We do this for simplicity and because it does not affect the outcome of this case.

4

¶7 In October 2003, Ochsner and the Kelleys again agreed, this time in a signed writing, that the Kelleys would buy the Kelley Lots from Ochsner. Still, the lots would not be conveyed until the Filing 2 Plat was recorded. The sale was scheduled to close on October 15, 2004, which also was the closing deadline for phase two of the Ochsner–Ryland sale, a condition precedent of which was Ochsner's recording of the Filing 2 Plat. In mid-October 2003, the Kelleys and Ryland signed their own agreement providing that the Kelley Lots would not be subject to the maintenance duties of the Association and obligating Ryland to record exclusionary covenants to that effect. However, Ryland never recorded any such covenants.

¶8 Phase one of the Ochsner–Ryland sale culminated on October 29, 2003, when the deed conveying the property in the Filing 1 Plat—fifty-four platted lots and associated common areas—was recorded. The Filing 1 Plat was recorded on November 13, 2003.

¶9 But phase two of the sale faltered when Ochsner failed to obtain approval of the Filing 2 Plat by the October 15, 2004, closing deadline. As a result, the Ochsner–Kelleys sale did not close either. The closing dates for both of these transactions were then extended to June 2005.

¶10 Meanwhile, also in October 2004, Ryland incorporated Ryan Ranch Community Association, Inc. ("the Association") as the homeowners association for Ryan Ranch. In March 2005, Ryland recorded the Declaration of Covenants, Conditions and Restrictions of Ryan Ranch Community Association ("CCR"). Ryland is the "Declarant" of the CCR. The CCR encumbered "the real property described on the attached Exhibit A" with various "covenants, conditions, restrictions, [and] obligations," including a duty to pay

5

assessments levied by the Association. The CCR defined the "Community" as "real property described in Exhibit A . . . or which becomes subject to this [CCR]." Exhibit A listed the land included in the community as Tracts A, B, C, E, F, and G of the Filing 1 Plat—none of which contained the Kelley Lots—and stated that additional property would be annexed into the community pursuant to article XII, section 5 of the CCR.

¶11 Article XII, section 5 detailed the process by which property described in Exhibit D of the CCR could be annexed into Ryan Ranch.[3] Specifically, Ryland had to (1) record a plat or map of the property to be annexed, unless one had been recorded already, and (2) record either a deed conveying that property to a third party or an "Annexation of Additional Land" form. Among the annexable property listed on Exhibit D was a metes and bounds description of a further subdivision of Tract H of the Filing 1 Plat, which would be divided into lots by, and become the land in, the Filing 2 Plat. The Kelley Lots were included in this description.

¶12 As June 2005 approached, Ochsner still had not recorded the Filing 2 Plat. The Kelleys agreed to postpone their June 10 closing date. On June 15, 2005, Ryland agreed to waive its right to condition closing phase two of the Ochsner–Ryland sale on final approval of the Filing 2 Plat and recorded a written instrument stating its intent to purchase all of the land to be included in the Filing 2 Plat except for the Kelley Lots. However, Ochsner and Ryland then changed their agreement such that Ryland would purchase the Kelley Lots as well. The plan was for Ryland to record the Filing 2 Plat

---

[3] Article XII, section 5 also provided, without reference to Exhibit D, that additional property could be annexed to Ryan Ranch with the consent of two-thirds of the Association's members. Annexation by consent is not at issue in this case.

6

and then reconvey the Kelley Lots back to Ochsner, who would sell them to the Kelleys as arranged initially. The Kelleys were not told of this change of plans.

¶13 On June 16, 2005, Ochsner recorded a deed conveying the remaining Ryan Ranch land, including the Kelley Lots, to Ryland ("the phase-two Ochsner–Ryland deed"), thus completing phase two of the Ochsner–Ryland sale. That same day, Ryland signed a deed reconveying the Kelley Lots to Ochsner ("the Ryland–Ochsner deed") but did not record it. About one week later, Ochsner signed a deed conveying the Kelley Lots to the Kelleys but did not record it.

¶14 On November 17, 2005, Ryland recorded the Filing 2 Plat, which included the Kelley Lots as Lots 1 through 7, Block 13. On December 20, 2005, pursuant to their plan, Ryland recorded the Ryland–Ochsner deed, and Ochsner recorded the deed conveying the Kelley Lots to the Kelleys.

¶15 In June 2006, the Kelleys sold one of the Kelley Lots to a builder who constructed a home on the lot and then sold the lot to Rick and Lora Zimmerman ("the Zimmermans").

¶16 In September 2010, the Association asserted for the first time that the Kelley Lots had been automatically annexed to Ryan Ranch in December 2005, when Ryland recorded the Ryland–Ochsner deed. The Association demanded that the Kelleys and the Zimmermans (collectively, "Respondents") pay more than $75,000 in past-due assessments, penalties, and fees for certain maintenance services provided by the Association since December 2005. When Respondents refused to pay, the Association sued them.

7

¶17 The Association pleaded claims for unpaid assessments, breach of contract, unjust enrichment, and foreclosure of liens it had recorded on the Kelley Lots. Respondents counterclaimed for a declaratory judgment that the Kelley Lots were never annexed to Ryan Ranch. They asserted three reasons for why this was so: (1) Ryland failed to annex the Kelley Lots in compliance with CCIOA, (2) Ryland failed to annex the Kelley Lots in compliance with the CCR, and (3) principles of equitable conversion precluded the transfer of the Kelley Lots in phase two of the Ochsner–Ryland sale, rendering any subsequent annexation invalid.

¶18 After discovery, both sides moved for summary judgment, disputing whether, as a matter of law, the Kelley Lots were annexed to Ryan Ranch. If they were annexed, then they were subject to the CCR and the attendant obligation to pay assessments to the Association; if they were not annexed, Respondents owed the Association nothing. The trial court ruled in the Association's favor, finding that the Kelley Lots were properly annexed and rejecting each of Respondents' three arguments to the contrary. Respondents appealed.

¶19 A division of the court of appeals reversed, with a majority of the judges embracing Respondents' argument that the Kelley Lots were not annexed in compliance with CCIOA. Ryan Ranch Cmty. Ass'n v. Kelley, 2014 COA 37, ¶¶ 1, 28, 37, __ P.3d __.[4] Like the trial court, the majority concluded that the right to annex property to a common interest community is a "development right" and that, as such, annexation must be accomplished in compliance with the Act's provisions governing the exercise of

_____

[4] The majority did not reach Respondents' other arguments. Ryan Ranch, ¶ 28.

8

development rights.  See id. at ¶¶ 34–37.  To exercise such rights under those provisions, a declarant must comply with certain plat or map requirements and record an "amendment to the declaration" that includes several statutorily enumerated components and that is properly recorded and indexed.  See id. at ¶¶ 35–36.

¶20   The majority found no CCIOA-compliant amendment for the Kelley Lots, rejecting the trial court's conclusion that the ODP, CCR, Filing 2 Plat, and phase-two Ochsner–Ryland deed, taken together, qualified as such.  In the majority's view, the ODP and CCR could not be considered amendments as a categorical matter, id. at ¶ 42, and the Filing 2 Plat and phase-two Ochsner–Ryland deed neither amended the declaration nor satisfied the applicable statutory requirements, id. at ¶¶ 45–49.  The majority therefore concluded that the purported annexation of the Kelley Lots was invalid for failure to comply with CCIOA and resolved the Association's breach of contract, unpaid assessments, and lien foreclosure claims in Respondents' favor.[5]

¶21   Judge Terry dissented.  Although she too disagreed with the trial court's analysis, she nonetheless believed the Kelley Lots were properly annexed.  Id. at ¶ 80 (Terry, J., dissenting).  She concluded that the Filing 2 Plat satisfied CCIOA's amendment requirement and that the Filing 2 Plat and Ryland–Ochsner deed together

---

[5] The majority did not address the merits of the Association's unjust enrichment claim. Ryan Ranch, ¶ 65.  It noted that, although the parties had stipulated to dismissing that claim, the claim was never formally dismissed and the stipulation conditioned dismissal on the court's entering a money judgment on the breach of contract and assessment claims.  Id.  The majority concluded that, in light of its decision, "the status of the unjust enrichment claim is unclear" and thus instructed the trial court to revisit the claim's viability on remand.  Id.  This aspect of the court of appeals' decision is not before us, and we therefore do not address it further.

9

satisfied article XII, section 5 of the CCR.  <u>Id.</u> at ¶¶ 83–84.  To Judge Terry, the fact that the Filing 2 Plat lacked some of the statutory amendment requirements was immaterial because the CCR provided for those requirements to be satisfied automatically whenever annexation occurred.  <u>Id.</u> at ¶¶ 88–89.  Nor did it matter that the Filing 2 Plat was improperly indexed because Respondents had notice of the Filing 2 Plat and the CCR and therefore were not prejudiced by any indexing error.  <u>Id.</u> at ¶¶ 90–93.  Judge Terry therefore determined that the trial court did not err in rejecting Respondents' CCIOA-based challenge to the annexation of the Kelley Lots and would have affirmed.[6]

¶22    The Association petitioned for certiorari, and we granted the petition.[7]

## II.  Standard of Review

¶23    We review a ruling on a motion for summary judgment de novo.  <u>P.W. v. Children's Hosp. Colo.</u>, 2016 CO 6, ¶ 11, 364 P.3d 891, 895.  Where the material facts are undisputed, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law.  <u>Id.</u>

---

[6] Judge Terry also considered and rejected Respondents' final, equitable-ownership argument.  <u>Ryan Ranch</u>, ¶ 95 (Terry, J., dissenting).

[7] Specifically, we agreed to review the following three issues:

1. Whether the process of "annexation by deed" to form units within common interest communities is void under the Colorado Common Interest Ownership Act (CCIOA).

2. Whether a plat map that subdivides property identified in an earlier declaration constitutes an amendment to said declaration.

3. Whether a homeowner who has actual knowledge of a declaration amendment can avoid paying community assessments based on a clerical error in the recorder's index.

¶24 We also review de novo a lower court's interpretation of covenants, <u>Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.</u>, 21 P.3d 860, 862 (Colo. 2001), and other recorded instruments, <u>Bolinger v. Neal</u>, 259 P.3d 1259, 1263 (Colo. App. 2010); <u>see also</u> <u>Meier v. Denver U.S. Nat'l Bank</u>, 431 P.2d 1019, 1021 (Colo. 1967) ("The construction of a written instrument [is] a question of law . . . ."). When their meaning is clear, we enforce such documents as written. <u>See</u> <u>Buick</u>, 21 P.3d at 862.

¶25 However, documents concerning CCIOA common interest communities must comply with that statute's provisions; to the extent they conflict, the statute prevails. <u>See</u> § 38-33.3-104 ("Except as expressly provided in this article, provisions of this article may not be varied by agreement, and rights conferred by this article may not be waived. A declarant may not . . . use any . . . device to evade the limitations or prohibitions of this article . . . ."). The meaning and effect of statutory provisions and whether those provisions conflict with covenants and other recorded instruments are questions of law that we review de novo. <u>See</u> <u>Robinson v. Legro</u>, 2014 CO 40, ¶ 10, 325 P.3d 1053, 1056.

## III. Analysis

¶26 The issue in this case is whether the Kelley Lots were annexed to Ryan Ranch in compliance with CCIOA. To resolve this question, we must for the first time determine what conditions the Act imposes on the annexation of land into a common interest community and how those conditions may be satisfied. We therefore begin by analyzing annexation under the Act. We then apply that analysis to the facts of this case in order to determine whether the Kelley Lots were annexed to Ryan Ranch in compliance with that statute.

## A. Annexation Under CCIOA

## 1. Annexation Is a "Development Right"

¶27 The General Assembly enacted CCIOA to, among other things, "establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38-33.3-102(1)(a). The statute defines "common interest community" as "real estate described in a declaration with respect to which a person, by virtue of such person's ownership of a unit, is obligated to pay for [various expenses associated with] other real estate described in a declaration."[8] § 38-33.3-103(8). The statute further provides that "[a] common interest community may be created . . . only by recording a declaration executed in the same manner as a deed," and that "[n]o common interest community is created until the plat or map for the common interest community is recorded." § 38-33.3-201(1). "A plat or map is a part of the declaration . . . ." § 38-33.3-209(1).

¶28 A "declaration," in turn, "means any recorded instruments, however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, plats and maps." § 38-33.3-103(13). Every declaration must, at a minimum, contain the mandatory components listed in section 38-33.3-205(1) of the Act. See § 38-33.3-205(1)(a)–(q). One

---

[8] Put differently, the label "common interest community" refers to "a real-estate development or neighborhood in which individually owned lots or units are burdened by a servitude that" binds the owners of those lots to contribute to the maintenance of common property or pay assessments to a homeowners association that maintains the common property or provides other services to the development. See Restatement (Third) of Prop.: Servitudes § 6.2(1) (2000).

of these components is "[a] description of any development rights . . . reserved by the declarant." § 38-33.3-205(1)(h). CCIOA defines "development rights" as follows:

> "Development rights" means any right or combination of rights reserved by a declarant in the declaration to:
>
> (a) Add real estate to a common interest community;
>
> (b) Create units, common elements, or limited common elements within a common interest community;
>
> (c) Subdivide units or convert units into common elements; or
>
> (d) Withdraw real estate from a common interest community.

§ 38-33.3-103(14).

¶29 Here, the court of appeals unanimously determined that the right to annex the Kelley Lots into Ryan Ranch is a "development right." See Ryan Ranch, ¶¶ 55–56; id. at ¶ 82 (Terry, J., dissenting). Both parties agree with this determination, and so do we.

¶30 At its inception, Ryan Ranch consisted only of the real estate described in Exhibit A of the CCR, which included Tracts A, B, C, E, F, and G of the Filing 1 Plat. Tract H of the Filing 1 Plat—which contained the Kelley Lots—was not described in Exhibit A and therefore was not initially a part of Ryan Ranch. Rather, Tract H was described in Exhibit D as "Annexable Property."

¶31 However, the CCR contemplated that Ryan Ranch could grow to include the annexable property described in Exhibit D if certain procedures were followed. Article XII, section 5 of the CCR spells out these procedures. When any of the property described in Exhibit D is annexed in accordance with article XII, section 5, that property is immediately made subject to the CCR. See CCR, art. XII, § 5(a) ("All provisions of

13

this [CCR] . . . shall apply to annexed property immediately . . . ."). Property that becomes subject to the CCR, in turn, becomes a part of Ryan Ranch. See CCR, art. I, § 11 (defining the community as "real property described in Exhibit A . . . or which becomes subject to this [CCR]" (emphasis added)). Thus, because Tract H—including the Kelley Lots—was not initially a part of Ryan Ranch, to annex that property under article XII, section 5 is to add that property to Ryan Ranch—i.e., to "[a]dd real estate to a common interest community." See § 38-33.3-103(14)(a).

¶32 The right to annex the Kelley Lots to Ryan Ranch therefore qualifies as a development right under CCIOA. It also qualifies as a development right under the CCR itself,[9] and the parties agree Ryland properly reserved it.

## 2. Exercising Development Rights Under CCIOA

¶33 Because annexation is a development right, any annexation of the Kelley Lots must have complied with the CCIOA provisions that govern the exercise of such rights. See § 38-33.3-104. Foremost among these provisions is section 38-33.3-210, entitled "Exercise of development rights." As relevant here, subsection (1) of that section provides:

> To exercise any development right reserved under section 38-33.3-205(1)(h), the declarant shall prepare, execute, and record an amendment to the declaration and, in a . . . planned community, comply with the provisions of section 38-33.3-209. The declarant is the unit owner of any units thereby created. The amendment to the declaration must assign an identifying number to each new unit created and . . . reallocate

---

[9] The CCR's definition of "Development Rights" mirrors section 38-33.3-103(14) and includes the right to "add real property to this Community, create Lots or Common Elements within this Community and subdivide Lots or convert Lots into Common Elements." See CCR, art. I, § 14(a).

14

the allocated interests among all units. The amendment must describe any common elements and any limited common elements thereby created . . . .[10]

Thus, to have properly annexed the Kelley Lots, Ryland must have recorded an "amendment to the declaration" that (1) assigned identifying numbers to each of the Kelley Lots, (2) reallocated the allocated interests among all units in Ryan Ranch, and (3) described any common elements and limited common elements created.

¶34 In addition, because the CCR states that Ryan Ranch is a planned community under CCIOA, Ryland also needed to comply with section 38-33.3-209. That section deals with plats and maps and provides in relevant part:

> Upon exercising any development right, the declarant shall record an amendment to the declaration with respect to that real estate reflecting change as a result of such exercise necessary to conform to the requirements of subsections (1) [and] (2) . . . of this section . . . .

§ 38-33.3-209(6). Subsection (1) of section 38-33.3-209, in turn, contains the following pertinent statements:

> A plat or map is a part of the declaration and is required for all common interest communities except cooperatives. . . . The requirements of [section 38-33.3-209] shall be deemed satisfied so long as all of the information required by [section 38-33.3-309] is contained in the declaration, a map or a plat, or some combination of any two or all of the three. Each plat or map must be clear and legible.

And subsection (2) lists several items that each map must include, "except to the extent such information is contained in the declaration or on a plat." § 38-33.3-209(2).

---

10 Section 38-33.3-210(1) includes an additional requirement applicable when limited common elements are created, but the Association submits that Ryan Ranch does not contain any limited common elements and nothing in the record contradicts this submission.

15

¶35 Finally, the amendment necessary to annex the Kelley Lots also must have complied with section 38-33.3-217, which governs amendments of declarations generally. As relevant here, section 38-33.3-217(3) states:

> Every amendment to the declaration must be recorded in every county in which any portion of the common interest community is located and is effective only upon recordation. An amendment must be indexed in the grantee's index in the name of the common interest community and the association and in the grantor's index in the name of each person executing the amendment.

So, to have complied with this provision, the requisite amendment must have been (1) recorded in Jefferson County, (2) indexed in the grantee's index in the name of Ryan Ranch and the Association, and (3) indexed in the grantor's index in Ryland's name.

¶36 We now consider whether all these requirements were satisfied for the annexation at issue here.

### B. Annexation of the Kelley Lots Under CCIOA

¶37 The court of appeals majority determined that the Kelley Lots were not annexed to Ryan Ranch—and never became subject to the CCR—because Ryland did not record an amendment to the declaration that complied with sections 38-33.3-210(1) and 38-33.3-217(3) of the Act. The Association disputes this determination, arguing that either the Filing 2 Plat or the Ryland–Ochsner deed, or both of them together, qualified as an "amendment to the declaration" and satisfied the various requirements of sections 38-33.3-210(1) and 38-33.3-217(3). We find the Association's arguments unavailing.

¶38 We note as a threshold matter that, although the Association devotes significant attention to arguing (1) that either or both of these documents "amended" the

"declaration" and therefore properly may be deemed an "amendment to the declaration," and (2) that a declarant may use more than one document to satisfy the amendment requirement, we need not resolve either of these points. For purposes of this case, we will assume, without deciding, that the Ryland–Ochsner deed and Filing 2 Plat, taken together, qualified as an "amendment to the declaration" under the Act. Even so, we find that amendment invalid for failure to satisfy the specific requirements of sections 38-33.3-210(1) and 38-33.3-217(3).[11]

### 1. Compliance with Section 38-33.3-210(1)

¶39 To comply with section 38-33.3-210(1), Ryland, as the declarant, needed to record an "amendment to the declaration" that (1) assigned an identifying number to each new unit created, (2) reallocated the allocated interests among all units, and (3) described any common elements and limited common elements created. See § 38-33.3-210(1).[12]

¶40 The Ryland–Ochsner deed and Filing 2 Plat arguably satisfied the first and last of these requirements. The deed states that it conveyed "Lots 1 through 7, Block 13, as

---

[11] Our conclusion that the deed and plat, taken together, fail to form a CCIOA-compliant amendment eliminates any need to analyze either document individually. In these circumstances, what the documents cannot accomplish together, neither could accomplish alone.

[12] Section 38-33.3-210(1) also states that "[t]he declarant is the unit owner of any units . . . created [by the declarant's exercise of a development right]." The Zimmermans assert, and the Association acknowledges, that this language arguably precludes annexation by deed as a general matter. However, because the court of appeals did not address this aspect of the statute, and because resolution of this issue is not necessary to this appeal, we decline to determine what this language may mean for annexation by deed as a general practice. Cf. Kaiser Found. Health Plan of Colo. v. Sharp, 741 P.2d 714, 718 (Colo. 1987) (declining to address several issues because "the resolution of those issues is not necessary to this appeal").

17

shown on the final plat of Ryan Ranch Filing 2" from Ryland to Ochsner, and the Filing 2 Plat depicts and labels each of the lots accordingly. If units had been created, it thus seems that each of them would have been assigned an identifying number. See § 38-33.3-103(17) (defining "identifying number" as "a symbol or address that identifies only one unit in a common interest community"). Likewise, it appears that annexing the Kelley Lots through the annexation-by-deed process would not have created any common elements or limited common elements to be described. The Ryland–Ochsner deed conveyed only the Kelley Lots themselves, and the Filing 2 Plat, although it described land that would become common elements, did not convey or lease that land to the Association and so did not "create" common elements. See § 38-33.3-103(5)(b) (defining "common elements" as "any real estate within a planned community owned or leased by the association").

¶41    However, neither of the documents satisfied the second requirement: reallocating the allocated interests among all units. The Association argues that the declaration amendment did not need to reallocate the allocated interests because the CCR specifically provides for such reallocation to occur automatically whenever land is annexed by deed.[13]  Thus, according to the Association, it would have served no

_____

[13] Article XII, section 5(a) states that, whenever property described in Exhibit D is annexed by deed:

> [E]ach such lot in the Property . . . shall constitute a Lot, and the Allocated Interests shall thereupon automatically be reallocated to be a fraction, the numerator of which shall be one (1) and the denominator of which shall be the total number of Lots within the Community upon recording of such deed . . . .

18

purpose for the amendment itself to reallocate the allocated interests and any failure of the amendment to do so amounts to an insubstantial defect that does not render the amendment invalid. We find this argument unavailing under the plain terms of the statute.

¶42 Section 38-33.3-210 states that "[t]he amendment to the declaration <u>must</u> . . . reallocate the allocated interests among all units." § 38-33.3-210(1) (emphasis added). Like the word "shall," the word "must" connotes a mandatory requirement. <u>See</u> <u>Willhite v. Rodriguez-Cera</u>, 2012 CO 29, ¶ 17, 274 P.3d 1233, 1238. Moreover, related CCIOA provisions make clear that this requirement cannot be satisfied by a reallocation formula included in a declaration. Section 38-33.3-207 specifically provides that, where "units may be added to or withdrawn from the common interest community, the declaration must state the formulas to be used to reallocate the allocated interests among all units included in the common interest community after the addition or withdrawal." § 38-33.3-207(3). If the formulas required by section 38-33.3-207(3) were sufficient to satisfy the reallocation obligation imposed by section 38-33.3-210(1), then that obligation would be superfluous as applied to the exercise of half of all development rights recognized by the Act. <u>See</u> § 38-33.3-103(14) (listing, as two of four development rights, the rights to add real estate to, and withdraw real estate from, a community).

¶43 Because "[w]e must avoid constructions that would render any words or phrases superfluous," <u>Doubleday v. People</u>, 2016 CO 3, ¶ 20, 364 P.3d 193, 196, we reject the Association's argument that the CCR's formula obviated the need for the amendment to

19

reallocate the allocated interests itself. It is for the legislature, not this court, to determine what "purpose" may or may not be served by this aspect of section 38-33.3-210(1). The unambiguous language of that provision states that any amendment effectuating a development right must reallocate the allocated interests among all units; since neither the Ryland–Ochsner deed nor the Filing 2 Plat did so, they failed to comply with the statute. See Lunsford v. W. States Life Ins., 908 P.2d 79, 84 (Colo. 1995) ("Where the language of a statute is clear on its face, we must apply it as written.").[14]

## 2. Compliance with Section 38-33.3-217(3)

¶44 To satisfy section 38-33.3-217(3), the amendment to the declaration needed to be (1) recorded in Jefferson County, (2) indexed in the grantor's index in Ryland's name, and (3) indexed in the grantee's index in the names of Ryan Ranch and the Association. See § 38-33.3-217(3). While the first two requirements were satisfied, it is undisputed that neither the Ryland–Ochsner deed nor the Filing 2 Plat complied with the third—the deed was indexed in Ochsner's name, and the plat was indexed in the name of "Ryan Ranch Filing 2."

¶45 Nonetheless, the Association argues this noncompliance is immaterial. According to the Association, any improper indexing was a clerical error that did not prejudice Respondents because Respondents had notice of the various documents that,

---

[14] We also reject the Association's contention that any failure to reallocate the allocated interests is an "insubstantial" defect under section 38-33.3-203(4). That section states in relevant part: "Title to a unit and common elements is not rendered unmarketable or otherwise affected by reason of an insubstantial failure of the declaration to comply with this article." § 38-33.3-203(4). Because we are not dealing here with marketability of title or noncompliance of a declaration, we find this provision inapplicable.

in the Association's view, effectuated the annexation of the Kelley Lots. Specifically, the Association contends that, because grantee indices are alphabetical, a search for "Ryan Ranch Community Association" would find the Filing 2 Plat under the name of "Ryan Ranch Filing 2," and, in any event, Respondents' deeds to the Kelley Lots referenced the Filing 2 Plat directly. Moreover, John Kelley signed the ODP, which stated that the community would be subject to a mandatory homeowners association; and the Zimmermans' pre-purchase title search exposed the Filing 2 Plat and the CCR. As a result, the Association argues Respondents had "overwhelming" notice of the relevant documents and a harmless clerical error in recording these documents should not excuse Respondents from paying assessments. We reject this theory.

¶46 Initially, we need not resolve the Association's "clerical error" argument. Although the Association asserts that clerical error explains why all "amendment documents" were improperly indexed, it offers a supporting rationale for this assertion with respect to the Filing 2 Plat alone. Noticeably absent from the Association's argument is any explanation for why, or even a direct assertion that, the defective indexing of the Ryland–Ochsner deed was a clerical error. Because the Filing 2 Plat could not have subjected the Kelley Lots to the CCR without the Ryland–Ochsner deed, see CCR, art. XII, § 5(a); CCR, Exs. A, D, any excuse for the defective indexing of the former document is irrelevant without a parallel excuse for the latter document. We find no such parallel excuse here.

¶47 Even assuming Respondents had actual notice of the Filing 2 Plat and the CCR, such notice would have been meaningless without additional notice of the Ryland–

Ochsner deed. While Exhibit D of the CCR would have informed Respondents that the Kelley Lots were <u>annexable</u>, article XII, section 5 of the CCR would have assured them that those lots could not be <u>annexed</u> without recordation of a plat <u>and</u> either a deed from Ryland to a third party or an annexation form. And notice of the Filing 2 Plat would have told Respondents only that the first of these requirements had been satisfied. Because no annexation form was recorded for the Kelley Lots, only the Ryland–Ochsner deed could have annexed those lots under the CCR. Thus, without notice of that deed, even actual notice of the CCR and Filing 2 Plat could not have informed Respondents that the Kelley Lots had been annexed.

¶48 The Association does not assert that Respondents had actual notice of the Ryland–Ochsner deed. Nor, due to noncompliance with section 38-33.3-217(3), did they have constructive notice of it: since the deed was listed in the grantee's index under "Ochsner," a search of that index for "Ryan Ranch" or "Ryan Ranch Community Association"—the names under which the deed should have been listed—would not have unearthed the deed. <u>See</u> <u>Franklin Bank, N.A. v. Bowling</u>, 74 P.3d 308, 313–14 (Colo. 2003) (constructive notice does not arise where document improperly indexed such that proper search of index will not reveal the document).

¶49 Nor, finally, did Respondents have inquiry notice of the Ryland–Ochsner deed. The long history of agreements among the Kelleys, Ochsner, and Ryland established (1) that the Kelleys would purchase the Kelley Lots from Ochsner after the Filing 2 Plat was recorded, (2) that the lots would be shown on the Filing 2 Plat, and (3) that the rest of the Filing 2 Plat, but not the Kelley Lots, would be a part of Ryan Ranch.

22

Consequently, nothing about the Filing 2 Plat or the CCR would have appeared abnormal to Respondents or reasonably caused them to suspect Ochsner and Ryland had privately conveyed the Kelley Lots between themselves before Ochsner sold the lots to the Kelleys. See Monaghan Farms, Inc. v. City & Cty. of Denver, 807 P.2d 9, 15 (Colo. 1991) ("Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further.").

¶50    Thus, contrary to the Association's contentions, no notice or clerical error ameliorates the fact that the amendment—again, assuming without deciding that the Filing 2 Plat and Ryland–Ochsner deed constituted an amendment—failed to comply with section 38-33.3-217(3) of the Act. Its presumptive detriment to Respondents aside, this defect takes on even greater significance when coupled with the additional failure to comply with section 38-33.3-210(1)'s reallocation requirement. Even where a community's allocated interests are apportioned equally, if an amendment annexing property to the community fails to affirmatively reallocate the allocated interests among all units, the only way for existing or prospective community members to determine a unit's proportionate rights and liabilities is to discern the total number of units in the community. This is not possible if the annexation amendment cannot be found due to improper recordation.

*    *    *

¶51    In the end, even assuming the Filing 2 Plat and Ryland–Ochsner deed, taken together, constituted an "amendment to the declaration" for purposes of CCIOA, that amendment failed to comply with the specific requirements of sections 38-33.3-210 and

23

38-33.3-217 of that statute. As a result, the amendment did not validly effectuate the development right of annexation as applied to the Kelley Lots. The Kelley Lots therefore were not brought into Ryan Ranch and are not subject to the CCR or its attendant obligation to pay assessments levied by the Association.

## IV. Conclusion

¶52 We hold that the right to annex property into a common interest community is a development right, the exercise of which must comply with CCIOA. In this case, the purported annexation of the Kelley Lots to Ryan Ranch failed to comply with the Act and therefore was invalid. Accordingly, we affirm the judgment of the court of appeals and remand for further proceedings consistent with this opinion. On remand, the court of appeals should consider the parties' respective entitlements to attorneys' fees and costs. See C.A.R. 39.5.

**JUSTICE COATS** joins in the majority and specially concurs, and **JUSTICE EID** and **JUSTICE MÁRQUEZ** join in the majority and the special concurrence.
**JUSTICE BOATRIGHT** does not participate.

JUSTICE COATS, specially concurring.

¶53 In this and one other case released today, see Pulte Home Corp. v. Countryside Cmty. Ass'n, 2016 CO 64, __ P.3d __, the court addresses slightly different aspects of the question whether a particular property is included in a common interest community: in this case, whether the property in question was added to an existing common interest community and, in the other case, whether the properties in question were included in the community at its creation. Phrased differently, these cases involve the fundamental questions how and when, under the Colorado Common Interest Ownership Act, §§ 38-33.3-101 to -402, C.R.S. (2016), a common interest community is created and how and when property that was not initially included in that community can later be added to it. Like the court as a whole, I would affirm the judgment of the court of appeals in this case (and reverse the court of appeals' finding in favor of the homeowners association in Pulte). While I join the opinion of the court in this case, I write separately both to explain my understanding of the implications of that opinion and to offer what I consider to be even more persuasive reasons for affirming the judgment below.

¶54 The specific matter at issue in this lawsuit is whether the so-called Kelley Lots were automatically added to a common interest community called Ryan Ranch at the time they were first conveyed by the declarant to a purchaser, notwithstanding the expressed intent of both the declarant and purchaser that they not be so added, and therefore whether the current owners of those lots owe the Community Association past-due assessments, penalties, and fees. The first and primary question upon which we granted review was therefore whether the "annexation by deed" method of adding

1

units to the community, as described in the Declarations of Covenants, Conditions, and Restrictions filed by declarant Ryland (referred to throughout the court's opinion as the "CCR"), in fact comported with statutory requirements. While the opinion of the court never directly states, in so many words, that the annexation-by-deed method of the CCR is incompatible with the statute and therefore fails, in and of itself, to successfully add units to the community, I consider that to be the clear and necessary import of its holding, a holding with which I fully agree.

¶55     I understand the heart of the court's rationale to be its conclusion that units can be added to an existing community by the declarant only by amending the declaration as statutorily required for the exercise of that declarant's development rights; and that the conveyance to a purchaser of even already platted property, the addition of which is specifically reserved to the declarant as part of its development rights, fails to comply with all the statutory requirements for such an amendment. While the court's opinion purports, for reasons I cannot fully appreciate, to distinguish an "amendment" to the declaration from a "valid" amendment to the declaration, it nevertheless makes clear that a failure of the declarant to comply with all the statutory requirements for an amendment necessary for the exercise of its development rights cannot successfully add property to the community. Similarly, while I do not particularly disagree with the court's subsequent discussion of deficiencies in recording the instruments at issue here, I understand any deficiency in recording to be an alternate basis for the court's holding, rather than integral to its determination that the failure to reallocate interests alone renders the annexation-by-deed method of adding units invalid.

¶56 Without expressly disputing the broader reasoning of the court of appeals, the majority more narrowly finds that a formula for reallocating already allocated interests, specified in an existing declaration, cannot be sufficient to meet the statutory requirement under section 38-33.3-210 for recording an amendment to the declaration that reallocates those interests, for the somewhat more technical reason that including such a formula in the declaration is already required by section 38-33.3-205. The majority reasons, as a matter of statutory construction, that to find compliance with section 205 alone sufficient to satisfy the requirement of section 210 to amend the declaration by reallocating interests would render the latter statutory requirement superfluous or meaningless. While I agree with this rationale, with regard to the central question on review—whether the recording of a deed conveying "annexable" property and a survey plat of that property automatically amends the declaration within the meaning of the Act—I would rely on more than one among various aids to statutory construction, especially where the statutory scheme as a whole so clearly mandates this same conclusion for what I consider to be more direct and powerful reasons.

¶57 The statutory requirement upon which the court's opinion relies, that in order to exercise development rights reserved to it, a declarant must record an amendment to the declaration actually reallocating the already allocated interests among all units, is merely one aspect of the "clear, comprehensive, and uniform framework" provided by the Act for balancing developer flexibility with maintaining certainty and predictability concerning the various interests implicated in both the creation and operation of the community. § 38-33.3-102. With regard to amending a declaration in particular, the Act

3

imposes a number of limitations, including the condition that an amendment requires an affirmative vote of at least a majority of unit owners (two-thirds in the case of increasing the number of units), unless it falls within a limited number of expressly delineated exceptions. See § 38-33.3-217. Among those expressly delineated exceptions is included any amendment affecting "phased communities," that is, common interest communities in which the declarant retains development rights. See §§ 38-33.3-103(21.5), -217(1)(a)(III)(E). From the context in which it appears, I understand the court's pronouncement that "the right to annex property" is a development right to refer only to the right of a declarant to add units to the community; and in addition to mandating that such an amendment reallocate interests, I believe the statute clearly imposes other limitations on a declarant's exercise of development rights that necessarily conflict with the annexation-by-deed method of the CCR.

¶58 While I accept the rule of construction relied on by the court, I would in any event find that the language of section 210 is clear enough, even without reference to the contents required of a declaration or to this rule of construction. Like the court of appeals, I believe the meaning of "amendment," in and of itself, denotes a change or alteration to the thing being amended. A statutory requirement for the recording of an amendment to the declaration containing certain elements cannot even conceptually be satisfied by the presence of those elements in the declaration as it existed prior to any amendment. While I therefore agree with the court, as far as it goes, I would go even farther and make clear that for the declarant to add units to the community, it must

4

record an amendment containing all of the elements required by section 210, including not only reallocation of interests but also the assignment of identifying numbers to those units and a description of any common or limited common elements, whether or not the declaration has already prospectively done so. A complete amendment, as required by section 210, is necessary, as was clearly intended, to make clear the current status of the community, which is no longer as represented in the recorded declaration but has been changed.

¶59 Beyond the requirement of recording an amendment, however, section 210 permits a declarant to add units according to its development rights, and therefore without the approval of the existing unit owners, only to the extent it is the owner of the units to be added. § 38-33.3-210 ("The declarant is the unit owner of any units thereby created."). Whether units added by the exercise of a declarant's development rights are conveyed to a purchaser later, or perhaps even simultaneously with the recording of the required amendment, cf. ALH Holding Co. v. Bank of Telluride, 18 P.3d 742, 745 (Colo. 2000) (execution of deed and mortgage are considered simultaneous acts, such that, as a matter of law, title never rests in the buyer unencumbered by the mortgage, regardless of the signing or recording of other purchase money mortgages), I consider it beyond challenge that the statutory scheme requires the declarant to be the owner of any unit so added, or that unit may not be added by the declarant at all. While the opinion of the court limits itself to holding annexation by deed insufficient in the absence of some recorded reallocation of interests, I would make express that the statutory scheme does

not permit a declarant to add units that have been conveyed to someone else without a prior or at least contemporaneous amendment meeting the requirements of the statute.

¶60 The subtext to this action for past-due fees and penalties is and has always been the question whether by including the addition of the Kelley Lots among the development rights reserved to the declarant, that declarant necessarily gave up any right to sell those lots without their being included as part of the Ryan Ranch. That consequence was clearly not intended by the declarant in this case when it drew up the CCR and created the community, and such a consequence would undoubtedly come as a shock to other developers doing likewise. As this case amply demonstrates, the construction sought by the Community Association would amount to nothing less than a trap for the unwary, in direct contravention of the fundamental purpose the Act was intended to serve.

¶61 Because I believe the primary merit of undertaking a further review by this court has always been our articulation of the limitations imposed on the exercise of development rights by section 38-33.3-210, I would not shy away from a full explication of that section.

¶62 I therefore specially concur in the opinion of the court.

I am authorized to state that JUSTICE EID and JUSTICE MÁRQUEZ join in this special concurrence in the opinion of the court.

6