COLORADO COURT OF APPEALS                      **2017COA37**

Court of Appeals No. 16CA0564
City and County of Denver District Court No. 14CV32637
Honorable J. Eric Elliff, Judge

Xiuhtezcatl Martinez, Itzcuahtli Roske-Martinez, Sonora Brinkley, Aerielle Deering, Trinity Carter, and Emma Bray, minors appearing by and through their legal guardians Tamara Roske, Bindi Brinkley, Eleni Deering, Jasmine Jones, Robin Ruston, and Diana Bray,

Plaintiffs-Appellants,

v.

Colorado Oil and Gas Conservation Commission,

Defendant-Appellee,

and

American Petroleum Institute and Colorado Petroleum Association,

Intervenors-Appellees.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FOX
Vogt*, J., concurs
Booras, J., dissents

Announced March 23, 2017

_____

Colorado Environmental Law, LTD., Katherine Marlin, Boulder, Colorado; Minddrive Legal Services, LLC, James Daniel Leftwich, Boulder, Colorado; Wild Earth Advocates, Julia Olson, Eugene, Oregon; for Plaintiffs-Appellants

Cynthia H. Coffman, Attorney General, Jake Matter, Senior Assistant Attorney General, Brittany K. Beckstead, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

Ryley Carlock & Applewhite, Richard C. Kaufman, Julie A. Rosen, Matthew K. Tieslau, Denver, Colorado, for Intervenors-Appellees

Western Environmental Law Center, Kyle Tisdel, Taos, New Mexico, for Amici Curiae Colorado Chapter Global Catholic Climate Movement, 350 Colorado, Eco-Justice Ministries, Denver Catholic Network and Global Climate Movement, The Rocky Mountain Peace and Justice Center, Wall of Women Colorado, Colorado People's Alliance, Citizens for a Healthy Fort Collins, Transition Fort Collins, The Fort Collins Sustainability Group, Citizens for a Healthy Community, Be the Change, The Colorado Coalition for a Livable Climate, Clean Energy Action, The Climate Culture Collaborative, Co-Op Members Alliance, The Community for Sustainable Energy, Eco Elders, Vibrant Planet, EnergyShouldBe.org, Frack Free Colorado, Lakewood Renewable Energy Lakewood, North Metro Neighbors for Safe Energy, and Protect Our Loveland

Cynthia H. Coffman, Attorney General, Claybourne F. Clarke, Senior Assistant Attorney General, Laura Terlisner Mehew, Benjamin Saver, Assistant Attorneys General, Denver, Colorado, for Amicus Curiae Colorado Department of Public Health and Environment

Kevin Lynch, Timothy Estep, Denver, Colorado, for Amici Curiae Our Health, Our Future, Our Longmont; Sierra Club; Earthworks; and Food & Water Watch

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1 Through their legal guardians, Xiuhtezcatl Martinez, Itzcuahtli Roske-Martinez, Sonora Brinkley, Aerielle Deering, Trinity Carter, and Emma Bray (collectively Petitioners), who reside and recreate in Colorado, appeal the district court's order and final judgment affirming a decision of the Colorado Oil and Gas Conservation Commission (the Commission) denying Petitioners' rulemaking petition. The American Petroleum Institute and the Colorado Petroleum Association (collectively Intervenors) intervened in the district court and filed an appellate brief supporting the district court's order. Additionally, on appeal, twenty-nine agencies and interest groups join as amici curiae, collectively filing three amici briefs.[1]

---

[1] The Colorado Department of Public Health and Environment filed an amicus brief in support of the Commission. Colorado Chapter Global Catholic Climate Movement, 350 Colorado, Eco-Justice Ministries, Denver Catholic Network and Global Climate Movement, The Rocky Mountain Peace and Justice Center, Wall of Women Colorado, Colorado People's Alliance, Citizens for a Healthy Fort Collins, Transition Fort Collins, The Fort Collins Sustainability Group, Citizens for a Healthy Community, Be the Change, The Colorado Coalition for a Livable Climate, Clean Energy Action, The Climate Culture Collaborative, Co-Op Members Alliance, The Community for Sustainable Energy, Eco Elders, Vibrant Planet, EnergyShouldBe.org, Frack Free Colorado, Lakewood Renewable Energy Lakewood, North Metro Neighbors for Safe Energy, and

¶ 2    This appeal concerns the scope of authority and obligation delegated to the Commission by the General Assembly in the Oil and Gas Conservation Act (the Act), §§ 34-60-101 to -130, C.R.S. 2016, to regulate oil and gas production in the interests of public health and safety.  The district court affirmed the Commission's order after concluding that the Commission lacked authority to consider a proposed rule that would require it to readjust the Act's balance between the development of oil and gas resources and protection of public health, safety, and welfare.  Because we agree with Petitioners that this conclusion was erroneous, we reverse the judgment of the district court and the decision of the Commission and remand to the district court to return the case to the Commission for further proceedings consistent with this opinion.

## I.    Background

¶ 3    Hydraulic fracturing (fracking) is a modern process used to stimulate oil and gas production from an existing well by injecting water mixed with other chemicals and materials which cause, and

Protect Our Loveland joined and filed an amici brief in support of Petitioners.  Our Health, Our Future, Our Longmont; Sierra Club; Earthworks; and Food & Water Watch joined and filed a separate amici brief in support of Petitioners.

hold open, fractures in a well bore allowing oil and gas to flow to the well bore via the newly created fractures. *City of Longmont v. Colo. Oil & Gas Ass'n*, 2016 CO 29, ¶ 1.

¶ 4    The Commission is charged with generally regulating oil and gas resource production in Colorado. *See* § 34-60-105, C.R.S. 2016; § 34-60-106, C.R.S. 2016.

¶ 5    On November 15, 2013, Petitioners filed a petition for rulemaking pursuant to the Commission's Rule 529(b). *See* Dep't of Nat. Res. Reg. 529, 2 Code Colo. Regs. 404-1. Petitioners proposed a rule requesting that the Commission

> not issue any permits for the drilling of a well for oil and gas unless the best available science demonstrates, and an independent, third party organization confirms, that drilling can occur in a manner that does not cumulatively, with other actions, impair Colorado's atmosphere, water, wildlife, and land resources, does not adversely impact human health and does not contribute to climate change.

¶ 6    The Commission solicited and received written stakeholder comments and held a hearing, on April 28, 2014, where parties favoring and opposing the proposed rule testified.

¶ 7     The Commission ultimately denied the petition, concluding that (1) the proposed rule mandated action that was beyond the limited statutory authority delegated by the General Assembly in the Act; (2) review by a third party — as Petitioners requested — contradicted the Commission's nondelegable duty to promulgate rules under section 34-60-106(11)(a)(II) and is contrary to the Act; and (3) the public trust doctrine, which Petitioners relied on to support their request, has been expressly rejected in Colorado.[2]

¶ 8     The Commission also concluded that "the Commission and the Colorado Department of Public Health and the Environment (CDPHE) are currently addressing many of the Petitioners' concerns through more gradual changes in regulation within their relative

---

[2] In 2016, in *City of Longmont v. Colorado Oil and Gas Association*, 2016 CO 29, the Colorado Supreme Court rejected the adoption of the public trust doctrine in Colorado in its more general rejection of a local moratorium on fracking which the court concluded was preempted by state law. *Id.* at ¶ 62. Petitioners initially urged the Commission to adopt the public trust doctrine in their petition for rulemaking but do not reassert their public trust doctrine argument on appeal, nor do they contest the Commission's conclusion as it narrowly relates to the public trust doctrine in Colorado. We therefore need not address the arguments of the Commission and Intervenors that Petitioners' justifications for the proposed rule, under the public trust doctrine, were not valid. *See Giuliani v. Jefferson Cty. Bd. of Cty. Comm'rs*, 2012 COA 190, ¶ 52 (claim raised in complaint but not further litigated was abandoned).

jurisdictions." In reaching its conclusions, the Commission largely relied on a memo from the Colorado Attorney General's Office which advised that the Commission lacked jurisdiction to adopt the proposed rule as written, and that there is no statutory basis to withhold drilling permits pending the Petitioners' proposed impact reviews.[3]

¶ 9    On July 3, 2014, Petitioners appealed the Commission's decision to the district court pursuant to the State Administrative Procedure Act, § 24-4-106, C.R.S. 2016. The parties filed briefs and Petitioners requested oral argument.

¶ 10    The district court, ruling on the briefs, applied the two-part test from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and concluded that the Act's language is clear and unambiguous and requires a balance between the development of oil and gas resources and protecting public health, safety, and welfare. The district court further concluded that the Commission did not act arbitrarily or capriciously in relying on the advice of the Attorney General's Office, and that it rationally decided

---

[3] By relying on the memo, the Commission waived any attorney-client privilege in the memo.

to deny the petition after considering input from stakeholders on both sides of the fracking issue.  Thus, the district court affirmed the Commission.

## II.    The Commission's Duty Under the Act

¶ 11    Petitioners contend that the district court and the Commission erred in interpreting the Act.  We agree.

### A.    Preservation and Standard of Review

¶ 12    The parties agree that Petitioners preserved their argument for appeal.

¶ 13    We may overturn an administrative agency's determination only if we conclude that the agency (1) acted arbitrarily or capriciously; (2) made a determination that is not supported by the record; (3) erroneously interpreted the law; or (4) exceeded its constitutional or statutory authority.  *Sapp v. El Paso Cty. Dep't of Human Servs.*, 181 P.3d 1179, 1182 (Colo. App. 2008).  The district court exercises no factfinding authority in its review of an agency decision and is in the same position as this court, so we engage in the same type of record review as did the district court.  *Id.*

¶ 14    We review statutory construction de novo.  *Archuletta v. Indus. Claim Appeals Office*, 2016 COA 66, ¶ 11.  While we defer to an

agency's policy determinations in rulemaking proceedings, that deference does not extend to "questions of law such as the extent to which rules and regulations are supported by statutory authority." *Simpson v. Cotton Creek Circles, LLC*, 181 P.3d 252, 261 (Colo. 2008). Under *Chevron*, the first step in reviewing an agency's interpretation of a statute involves using traditional tools of statutory construction to determine whether the language of the statute is clear and whether the legislature has spoken directly to the question at issue. 467 U.S. at 842-43. We begin interpreting a statute by looking to the plain and ordinary meaning of the language. *Robinson v. Legro*, 2014 CO 40, ¶ 14. We "read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Id.* (citation omitted). We presume the legislature intended the entire statute to be effective and avoid constructions that would render any part meaningless. *Id.* "When we interpret a comprehensive legislative scheme, we must give meaning to all portions thereof and construe the statutory provisions to further the legislative intent." *Droste v. Bd. of Cty. Comm'rs*, 159 P.3d 601, 605 (Colo. 2007). If the

7

statutory intent is plain and unambiguous, our inquiry ends there. *See Chevron*, 467 U.S. at 842-43.

## B. Law

¶ 15   The Commission is a creature of state statute and has only the powers conferred on it by the Act. *Chase v. Colo. Oil & Gas Conservation Comm'n*, 2012 COA 94, ¶ 26. The Act grants the Commission broad jurisdiction and empowers it to "make and enforce rules, regulations, and orders" and "to do whatever may reasonably be necessary" to carry out the provisions of the Act. *Id.* (quoting § 34-60-105(1)). Pursuant to the Act, the Commission is authorized to regulate "the drilling, producing, and plugging of wells and all other operations for the production of oil and gas." § 34-60-106(2)(a).

¶ 16   Significantly here, the General Assembly declares that it is in the public interest to

> [f]oster the responsible, balanced development, production, and utilization of the natural resources of oil and gas in the state of Colorado *in a manner consistent with* protection of public health, safety, and welfare, including protection of the environment and wildlife resources.

§ 34-60-102(1)(a)(I), C.R.S. 2016 (emphasis added).

## C. Analysis

¶ 17    The Commission interpreted section 34-60-102(1)(a)(I) as requiring a balance between oil and gas production and public health, safety, and welfare.  The Commission concluded that Petitioners' suggested interpretation would "have required the Commission to readjust the balance crafted by the General Assembly under the Act, and is therefore beyond the Commission's limited grant of statutory authority."

¶ 18    Petitioners argue that the Commission's interpretation renders the phrase "in a manner consistent with protection of public health, safety, and welfare" in section 34-60-102(1)(a)(I) superfluous. Petitioners further contend that the balance sought by the General Assembly in section 34-60-102(1)(a)(I) applies to the development, production, and utilization of oil and gas resources, which must be authorized in a balanced manner — meaning without causing waste — and subject to adequate consideration of public health, safety, and environmental and wildlife impacts.  Petitioners maintain that the Commission incorrectly interpreted the plain language of section 34-60-102(1)(a)(I) and, in doing so, erred in denying their petition for rulemaking.

¶ 19    We agree with Petitioners, the Commission, and the district court that the language of section 34-60-102(1)(a)(I) is clear and unambiguous, but we conclude that it unambiguously supports a conclusion different from that reached by the Commission and the district court.  The Act clearly states that fostering "responsible, balanced development, production, and utilization of the natural resources" is in the public interest.  § 34-60-102(1)(a)(I).  Then, the Act qualifies itself by adding the key phrase "in a manner consistent with" the protection of public health and other related concerns.  *Id.*; *see also City of Jefferson City v. Cingular Wireless, LLC*, 531 F.3d 595, 611 (8th Cir. 2008) (the fact that parties disagree about what a statute means does not itself create ambiguity).

¶ 20    Contrary to the Commission's conclusion, the use, in section 34-60-102(1)(a)(I), of the term "balanced" relates to and modifies "development, production, and utilization."  As used in the plain text, "balanced" is an adjective which modifies the nouns "development, production, and utilization."  *See* § 34-60-102(1)(a)(I); *see also Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n*, 773 P.2d 1046, 1048 (Colo. 1989) (an adjective modifies a noun that follows it).  The remaining provisions in section

34-60-102(1)(a)(I) are not affected by the term "balanced."[4]  Instead, the statutory language provides that fostering balanced development is in the public interest when that balanced development is completed "in a manner consistent with" public health, safety, and environmental and wildlife impacts. § 34-60-102(1)(a)(I); *see also Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 925 (Colo. 1997) (recognizing that the Act's purposes are "to encourage the production of oil and gas in a manner that protects public health and safety and prevents waste").

¶ 21    Critical here is the proper interpretation of the phrase "in a manner consistent with."  We agree with Petitioners that "in a manner consistent with" does not indicate a balancing test but rather a condition that must be fulfilled.  This interpretation is supported by similar interpretations from our supreme court as well

_____

[4] This is demonstrated by the historical importance of the General Assembly qualifying "development, production, and utilization" with the adjective "balanced."  As further explained below, in our discussion of the Act's legislative evolution, the General Assembly sought balanced development, production, and utilization to curb unnecessary waste and to preserve the correlative rights of other potential users of natural resources such as oil and gas.

11

as the commonly understood use of the phrase as evidenced by its general use in statutes and judicial opinions.

¶ 22     The Colorado Supreme Court, when asked to interpret certain provisions of the Local Government Land Use Control Enabling Act of 1974, § 29-20-102, C.R.S. 2016, explicitly and clearly interpreted the phrase "in a manner consistent with" as meaning "subject to." *See Droste*, 159 P.3d at 606.  There, the court interpreted the statutory phrase "in a manner consistent with constitutional rights" as meaning "subject to the constitutional rights of the property owner[.]" *Id.*  This interpretation supports our conclusion that the language of the Act does not create a balancing test weighing safety and public health interests against development of oil and gas resources, but rather, the Act indicates that fostering balanced, nonwasteful development is in the public interest when that development is completed subject to the protection of public health, safety, and welfare, including protection of the environment and wildlife resources.  *See* § 34-60-102(1)(a)(I).

¶ 23     Interpreting the phrase "in a manner consistent with" as a balancing test disregards the plain meaning of the phrase.  The phrase denotes more than a mere balancing.  Cases in Colorado are

12

replete with instances where the phrase is used to denote "subject to" rather than "balanced with." *See, e.g.*, *People v. Baez-Lopez*, 2014 CO 26, ¶ 28 ("[W]e conclude that the recordings were physically sealed and preserved in a manner consistent with section 16-15-102(8)(a)."); *In re Great Outdoors Colo. Tr. Fund*, 913 P.2d 533, 539 (Colo. 1996) ("In enacting legislation, the General Assembly is authorized to resolve ambiguities in constitutional amendments in a manner consistent with the terms and underlying purposes of the constitutional provisions."); *Stan Clauson Assocs., Inc. v. Coleman Bros. Constr., LLC*, 2013 COA 7, ¶ 10 ("Professional standards of care reflect the policy that members of professions must do their work not just reasonably well, but rather 'in a manner consistent with members of the profession in good standing.'" (quoting *Command Commc'ns, Inc. v. Fritz Cos.*, 36 P.3d 182, 189 (Colo. App. 2001))).

¶ 24     The phrase is often used in the dispositional language of opinions from this court and other appellate courts.  Divisions of this court, when remanding a case to a district court for further proceedings, often use language similar to "the case is remanded for proceedings in a manner consistent with this opinion."  *See*

*Vashone-Caruso v. Suthers*, 29 P.3d 339, 345 (Colo. App. 2001); *1st Am. Sav. Bank v. Boulder Cty. Bd. of Comm'rs*, 888 P.2d 360, 363 (Colo. App. 1994). The intention of the phrase "in a manner consistent with" in these settings is not to instruct a court on remand to take action in a manner "balanced with" the opinion from the appellate court, but instead instructs that the court on remand must take action subject to the appellate opinion.

¶ 25    As used in the Act, the phrase qualifies the preceding provision, promoting the development of oil and gas. *See* § 34-60-102(1)(a)(I). We therefore conclude that the Commission erred in interpreting section 34-60-102(1)(a)(I) as requiring a balance between development and public health, safety, and welfare. The plain meaning of the statutory language indicates that fostering balanced, nonwasteful development is in the public interest when that development is completed subject to the protection of public health, safety, and welfare. *See*

§ 34-60-102(1)(a)(I); *see also Gerrity Oil & Gas Corp.*, 946 P.2d at 925.[5]

¶ 26    Our interpretation also gives meaning to all of the words in the statute, whereas the Commission's interpretation effectively disregarded the phrase "in a manner consistent with."  *See Legro*, ¶ 14 (we avoid statutory constructions that would render any part of a statute meaningless).

¶ 27    We disagree with the Commission and its amici that other sections of the Act support a contrary interpretation.  The Commission argues that the language of section 34-60-106(2)(d) — stating that the Commission has the authority to regulate "[o]il and

[5] Moreover, the Colorado Revised Statutes contain many examples of instances where the General Assembly has articulated clear intent that a balancing test be employed, and such language is not contained in the Act.  *See, e.g.*, § 24-91-101(2), C.R.S. 2016 ("[T]here is a substantial statewide interest in ensuring that the policy underlying the efficient expenditure of public moneys is balanced with the policy of fostering a healthy and viable construction industry."); § 6-1-902(1)(c), C.R.S. 2016 ("Individuals' privacy rights and commercial freedom of speech should be balanced in a way that accommodates both the privacy of individuals and legitimate telemarketing practices[.]").  Had the General Assembly intended for a balancing test to be applied in section 34-60-102(1)(a)(I), C.R.S. 2016, it would have explicitly said so.  *See Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 57 (Colo. 2001).

gas operations so as to prevent and mitigate significant adverse environmental impacts . . . to the extent necessary to protect public health, safety, and welfare . . . taking into consideration cost-effectiveness and technical feasibility[]" — demonstrates that the Act calls for the balance that the Commission read into the language of section 34-60-102.  However, section 34-60-106(2)(d) supports the conclusion that the Commission has authority to promulgate rules regulating oil and gas development in the interest of protecting public health, safety, and welfare.  *See* § 34-60-106(2)(d).  The General Assembly's use of the phrase "to the extent necessary to protect public health, safety, and welfare," when describing the purpose of regulation, evidences a similar intent to elevate the importance of public health, safety, and welfare above a mere balancing — the same as what the General Assembly wrote into section 34-60-102.[6]  Section 34-60-106(2)(d) in no way conflicts with our interpretation of section 34-60-102.

---

[6] The statutory language "to the extent necessary" evidences the General Assembly's intent to create a mandatory condition rather than a factor in a general balancing inquiry.  *See, e.g., Calderon v. Am. Family Mut. Ins. Co.*, 2016 CO 72, ¶ 53 (insurance statutes intended that benefit be provided "to the extent necessary" for full

¶ 28    Our conclusion is further supported by the evolution of the General Assembly's regulation of the oil and gas industry in Colorado and its numerous alterations to the language of the Act. Originally, the Act contained no qualifying language regarding responsible, balanced development, or the protection of public health and the environment. *See* Ch. 208, sec. 10, § 100-6-22, 1955 Colo. Sess. Laws 657. For decades, the Act read: "It is hereby declared to be in the public interest to foster, encourage and promote the development, production and utilization of the natural resources of oil and gas in the state of Colorado[.]" *Id.*

¶ 29    In 1994 the General Assembly added the language "in a manner consistent with protection of public health, safety, and welfare[.]" Ch. 317, sec. 2, § 34-60-102, 1994 Colo. Sess. Laws 1978. Then, in 2007, the General Assembly completed the Act as it reads today by amending and adding language so that the statute read: "It is declared to be in the public interest to foster . . .

---

compensation) (citing *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo. 1989)); *People in Interest of G.S.*, 820 P.2d 1178, 1180 (Colo. App. 1991) (a guardian ad litem has the affirmative duty to participate in proceedings "to the extent necessary" to represent the child).

17

responsible, balanced [resource] development[.]" Ch. 320, sec. 1, § 34-60-102, 2007 Colo. Sess. Laws 1357.

¶ 30    These amendments reflect the General Assembly's general movement away from unfettered oil and gas production and incorporation of public health, safety, and welfare as a check on that development. This understanding supports our conclusion that the Act was not intended to require that a balancing test be applied when agencies charged with carrying out and enforcing the intent behind the Act, like the Commission, make decisions on regulation, including a decision denying a petition for a proposed rule. Rather, the clear language of the Act — supported by the Act's legislative evolution and the Commission's own enforcement criteria — mandates that the development of oil and gas in Colorado be regulated subject to the protection of public health, safety, and welfare, including protection of the environment and wildlife resources. *See* Oil & Gas Conservation Comm'n, Colorado Oil and Gas Conservation Commission Enforcement Guidance and Penalty Policy 1 (Jan. 2015), https://perma.cc/39RU-99MF ("In Colorado . . . the development of . . . natural resources must be consistent with protection of public health, safety, and welfare, including the

environment and wildlife resources, at all times[.]"); *see also* § 34-60-106(2)(d).

¶ 31    Because we conclude that the district court and the Commission erroneously interpreted the Act, we reverse. *Nixon v. City & Cty. of Denver*, 2014 COA 172, ¶ 12 (an agency abuses its discretion when it erroneously interprets the law). The record indicates that the Commission based its denial of the petition for rulemaking primarily on its determination that it lacked authority to implement Petitioners' proposed rule. The administrative record does not contain sufficient findings of fact for us to affirm the Commission's decision on alternative grounds — such as the Commission's statement that "there are other Commission priorities that must take precedence over the proposed rulemaking at this time," or the Commission's reference to the proposed rule's impermissible delegation of Commission duties to a third party (an issue not addressed by the district court or briefed on appeal to this court). *See Chase*, ¶ 59 (remand proper when record contains insufficient basis for agency conclusions).

¶ 32    Our decision does not address the merits of whether the Commission should adopt Petitioners' proposed rule. Our review is

limited to the Commission's rejection of Petitioners' proposed rule based on the Commission's determination that such action would exceed its statutory authority under the Act — which is legally incorrect. *See, e.g.*, *United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742, 749 (1972) (Courts do not "inquire into the wisdom of the regulations" that a commission promulgates but, instead, inquire into "the soundness of the reasoning by which [a] [c]ommission reaches its conclusions.").

¶ 33    The Commission argues that under *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 527-28 (2007), judicial review of denials of rulemaking petitions is limited and deferential. True, but a denial of a rulemaking petition remains properly the subject of judicial review. *See id.*; *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4 (D.C. Cir. 1987) (agency refusals to institute rulemaking proceedings are subject to judicial review). Unlike in *Massachusetts v. Environmental Protection Agency*, where the Supreme Court concluded, on the merits, that the Environmental Protection Agency's refusal to promulgate a proposed rule was an abuse of discretion, 549 U.S. at 528, 534, our decision does not reach the merits of whether the Commission

20

abused its discretion in refusing to promulgate Petitioners' proposed rule. Instead, our decision only addresses the Commission's interpretation of its authority under the Act as a part of its denial of the petition for rulemaking, which we conclude is incorrect. *See Allegheny-Ludlum*, 406 U.S. at 749.

### III. Constitutional Contentions

¶ 34 Petitioners contend that the Commission's interpretation of the Act is an unconstitutional infringement of Petitioners' natural rights to enjoy their lives and liberties, protect their property, and obtain their safety and happiness. Colo. Const. art. II, § 3.

¶ 35 Because we conclude that the Commission erred in its interpretation of the Act and reverse, we need not address Petitioners' constitutional arguments. *See City of Florence v. Pepper*, 145 P.3d 654, 660 (Colo. 2006) ("Where possible, we avoid a constitutional analysis in favor of a statutory resolution."); *Club Matrix, LLC v. Nassi*, 284 P.3d 93, 99 (Colo. App. 2011) (we need not address additional arguments rendered moot by our ultimate disposition).

## IV. Conclusion

¶ 36    The Commission's order denying Petitioners' petition for rulemaking and the district court's order on appeal are reversed, and the case is remanded to the district court to return it to the Commission for further proceedings consistent with this opinion.

JUDGE VOGT concurs.

JUDGE BOORAS dissents.

JUDGE BOORAS, dissenting.

¶ 37    I disagree with the majority's interpretation of the phrase "in a manner consistent with" and its reliance on a legislative declaration to find a mandatory duty.  Therefore, I respectfully dissent from the majority's conclusion that the statutory scheme of the Oil and Gas Conservation Act (the Act), §§ 34-60-101 to -130, C.R.S. 2016, requires protection of public health, safety, and welfare as a determinative factor, instead of requiring balancing between those considerations and oil and gas production.

¶ 38    The Colorado Oil and Gas Commission (the Commission) discerns that its role under the Act is to balance oil and gas development with other public interests.  "Courts may only disregard an agency's interpretation of a statute it is charged with enforcing when that interpretation is inconsistent with the clear language of the statute or the agency has exceeded the scope of the statute."  *Huber v. Kenna*, 205 P.3d 1158, 1164 (Colo. 2009) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

¶ 39    The majority concludes that the Commission's interpretation of the Act is inconsistent with the clear language of the Act, in

23

particular section 34-60-102(1)(a)(I), C.R.S. 2016, which provides that it is in the public interest to:

> Foster the responsible, balanced development, production, and utilization of the natural resources of oil and gas in the state of Colorado in a manner consistent with protection of public health, safety, and welfare, including protection of the environment and wildlife resources.

¶ 40    In order to reach this conclusion, the majority examines the use of the phrase "in a manner consistent with" in a number of unrelated contexts, largely relying on remand language from opinions, and surmises that it does not indicate "balancing," but rather "a condition that must be fulfilled" or "subject to."  But *Webster's Third New International Dictionary* defines "consistent with" as "to be consistent, harmonious, or in accordance," and "consistently" as "compatibly," "congruously," "in harmony with," and "in a persistent or even manner."[1]  *Webster's Third New International Dictionary Unabridged* 484 (2002).  Contrary to the majority's supposition, these definitions signify a balancing process.

---

[1] The use of a dictionary is appropriate to interpret undefined statutory terms.  *Bontrager v. La Plata Elec. Ass'n Inc.,* 68 P.3d 555, 559 (Colo. App. 2003) (citing 2A Norman J. Singer, *Sutherland on Statutory Construction* § 47.27 (6th ed. 2000)).

¶ 41    Significantly, the language on which the majority primarily relies to support its view that protection of public health, safety, and welfare is a mandatory precondition is located in the legislative declaration to the Act.  Even when codified, a legislative declaration is primarily "an explicit or formal statement or announcement about the legislation" that "indicates the problem the General Assembly is trying to address." *Lester v. Career Bldg. Acad.*, 2014 COA 88, ¶ 27 (citation omitted).  Generally, a legislative declaration is used only to interpret a statute that is ambiguous; it cannot override the language of a statute.  *See* § 2-4-203(1)(g), C.R.S. 2016 (identifying the legislative declaration or purpose as an aid in construing ambiguous statutes); *People in Interest of T.B.*, 2016 COA 151M, ¶¶ 41, 42, as modified on denial of reh'g (Dec. 29, 2016) (noting that courts generally do not consider a legislative declaration where a statute is unambiguous and that a legislative declaration cannot override a statute's language); *see also People v. Ennea*, 665 P.2d 1026, 1029 (Colo. 1983) (rejecting the defendant's attempt to add an element to the sexual exploitation of a child statute based on language in the legislative declaration).

25

¶ 42    The actual authority of the Commission to regulate oil and gas

is set out in section 34-60-106(2)(d), C.R.S. 2016:

> The commission has the authority to regulate
> . . . [o]il and gas operations so as to prevent
> and mitigate significant adverse environmental
> impacts on any air, water, soil, or biological
> resource resulting from oil and gas operations
> to the extent necessary to protect public
> health, safety, and welfare, including
> protection of the environment and wildlife
> resources, *taking into consideration cost-
> effectiveness and technical feasibility.*

(Emphasis added.)

¶ 43    The majority concludes that this section also supports its

view, construing the use of "to the extent necessary" as evidencing

"a similar intent to elevate the importance of public health, safety,

and welfare above a mere balancing."  However, the statute, read as

a whole, directs the Commission to "prevent and mitigate significant

adverse environmental impacts," and also to take into consideration

"cost-effectiveness and technical feasibility."  There would be no

reason to consider cost-effectiveness and technical feasibility if

protection of the public health, safety, and welfare was, by itself, a

determinative consideration.

26

¶ 44    Because the Commission is required by statute to regulate oil

and gas operations by balancing the relevant considerations, the

Commission properly denied Petitioners' petition for rulemaking,

which would have required the Commission to view public health

and environmental considerations as being determinative.  The

majority characterizes this denial as a "refusal to engage in the

rulemaking process."  The majority may be focusing on the use of

the word "jurisdiction" in the Commission's order.[2]  However, a

careful reading of the order reveals that the Commission deemed

the proposed rulemaking to be outside its statutory authority, not

outside of its jurisdiction.

¶ 45    Even Petitioners conceded in the district court that the

Commission "did not claim that it doesn't have the jurisdiction to

promulgate a rule," but rather that it did not have the authority

under the statute to promulgate the rule Petitioners were requesting

---

[2] The Commission's order primarily used the word "authority."
However, the order used the word "jurisdiction" referring to a memo
that had been prepared by the Colorado Attorney General's office
regarding the Colorado Department of Public Health and
Environment's expertise in air quality.  *See People v. Sherrod*, 204
P.3d 466, 470 (Colo. 2009) (noting that there is sometimes
"analytical confusion" between the terms "authority" and
"jurisdiction").

— to view health and environmental concerns as overriding. Indeed, as discussed above, the Commission's interpretation that the statute requires a balancing of interests is correct.

¶ 46 The Commission has consistently recognized its duty to balance health and environmental concerns with the promotion of oil and gas development. Our supreme court noted in *City of Fort Collins v. Colorado Oil & Gas Association,* 2016 CO 28, ¶ 29, that, consistent with its legislative authorization, "the Commission has promulgated an exhaustive set of rules and regulations 'to prevent waste and to conserve oil and gas in the State of Colorado while protecting public health, safety, and welfare.' Dep't of Nat. Res. Reg. 201, 2 [Code Colo.] Regs. 404–1 (2015)."

¶ 47 For these reasons, I would affirm the district court's order upholding the Commission's order denying Petitioners' petition for rulemaking. In concluding that the district court order should be affirmed, I would also reject the Petitioners' constitutional arguments based on the public trust doctrine and that the Commission's interpretation of the Act is an unconstitutional infringement of Petitioners' natural rights to enjoy their lives and liberties, protect their property, and obtain their safety and

happiness. The Colorado Supreme Court declined to apply the public trust doctrine in *City of Longmont v. Colorado Oil & Gas Association,* 2016 CO 29, ¶ 62.