Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 11, 2019

**2019 CO 16**

**No. 18SA83, <u>In the Matter of Laurie A. Booras</u> — Judicial Discipline — Sanctions.**

In this judicial disciplinary proceeding, the Supreme Court considers the exceptions of a now-former Colorado Court of Appeals judge to the Colorado Commission on Judicial Discipline's (the "Commission's") recommendation that the judge be removed from office and that the judge be ordered to pay the costs incurred by the Commission in this matter.

The Commission's recommendation was based on factual findings and conclusions of law determining that the judge had violated Canon 1, Rule 1.2, Canon 3, Rule 3.1, and Canon 3, Rule 3.5 of the Colorado Code of Judicial Conduct by (1) disclosing confidential information belonging to the court of appeals (namely, the vote of a court of appeals division on a case prior to the issuance of the decision in that case) to an intimate, non-spousal partner and (2) using inappropriate racial epithets in communications with that intimate partner, including a racially derogatory reference to a court of appeals colleague.

The court concludes that the Commission properly found that the judge's communications with the judge's then-intimate partner were not protected by the First Amendment. The court further concludes that, given the judge's resignation, which the judge tendered and which became effective after the Commission made its recommendation, the court need not decide whether the judge's removal from office was an appropriate sanction. Rather, the court concludes that the appropriate sanction in this case is the acceptance of the judge's resignation, the imposition of a public censure, and an order requiring the judge to pay the Commission's costs in this matter.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 16**

**Supreme Court Case No. 18SA83**
*Original Proceeding in Discipline*
Colorado Commission on Discipline Case No. 18-36

**In the Matter of Laurie A. Booras**

**Order re: Recommendation of the Colorado Commission on Judicial Discipline and the Imposition of Sanctions**
*en banc*
March 11, 2019

**Attorneys for Complainant-Appellee The People of the State of Colorado:**
Jessica E. Yates, Regulation Counsel
Gregory G. Sapakoff, Deputy Regulation Counsel
        *Denver, Colorado*

**Attorneys for Respondent-Appellant Laurie A. Booras:**
Recht Kornfeld, P.C.
David M. Beller
Richard K. Kornfeld
        *Denver, Colorado*

**PER CURIAM.**

¶1 In this judicial disciplinary proceeding, we consider the exceptions of now-former Colorado Court of Appeals Judge Laurie A. Booras to the Colorado Commission on Judicial Discipline's (the "Commission's") recommendation that Judge Booras be removed from office and that she be ordered to pay the costs incurred by the Commission in this matter.

¶2 The Commission's recommendation was based on the factual findings and conclusions of law set forth in the December 12, 2018 Report of the Special Masters in this case. That report concluded that Judge Booras had violated Canon 1, Rule 1.2, Canon 3, Rule 3.1, and Canon 3, Rule 3.5 of the Colorado Code of Judicial Conduct by (1) disclosing confidential information belonging to the court of appeals (namely, the vote of a court of appeals division on a case prior to the issuance of the decision in that case) to an intimate, non-spousal partner and (2) using inappropriate racial epithets in communications with that intimate partner, including a racially derogatory reference to a court of appeals colleague.

¶3 Judge Booras timely filed exceptions to the Commission's recommendation, contending that her communications with her then-intimate partner were protected by the First Amendment and that the recommendation that she be removed from office was too severe under the circumstances of this case. In addition, by letter dated January 2, 2019, Judge Booras advised the Chief Justice that she was resigning her position as a Colorado Court of Appeals Judge, effective as of the close of business on January 31, 2019, although no party contends that Judge Booras's resignation rendered the present matter moot.

¶4     Having now considered the record and the briefs of the parties, we conclude that the Commission properly found that Judge Booras's communications with her then-intimate partner were not protected by the First Amendment. We further conclude that, given Judge Booras's resignation, which she tendered and which became effective after the Commission made its recommendation, we need not decide whether Judge Booras's removal from office was an appropriate sanction. Rather, we conclude that the appropriate sanction in this case is the acceptance of Judge Booras's resignation, the imposition of a public censure, and an order requiring Judge Booras to pay the Commission's costs in this matter.

## I. Facts and Procedural History

¶5     In 2007, Judge Booras began what would become a ten-year relationship with a man whom she met online ("J.S."). At the time the two met, J.S. represented that he was divorced and living in Denver, although Judge Booras later learned that he was actually married and living in California. Although the two did not see each other frequently, they communicated often, and Judge Booras described their relationship as an intimate one that she had believed would one day result in marriage. The evidence in the record tends to show, however, that by the time of the events at issue, the relationship was deteriorating, and Judge Booras had good reason to distrust J.S.

¶6     As pertinent here, on February 21, 2017, a division of the court of appeals heard oral argument in *Martinez v. Colorado Oil & Gas Conservation Commission*, 2017 COA 37, __ P.3d __, *rev'd*, 2019 CO 3, 433 P.3d 22, a case principally concerning the extent to which the Colorado Oil & Gas Conservation Commission is required to consider public health

3

and the environment in deciding whether to grant permits for oil and gas development. Judge Booras sat on that division.

¶7 The next morning, Judge Booras sent J.S. an email stating:

> We had an oral argument yesterday re: fracking ban where there was standing room only and a hundred people in our overflow video room. The little Mexican is going to write in favor of the Plaintiffs and it looks like I am dissenting in favor of the Oil and Gas Commission. You and Sid [a colleague of J.S.'s] will be so disappointed.

¶8 As pertinent to the issues now before us, "The little Mexican" was a reference to one of Judge Booras's colleagues, a Latina who would ultimately write the opinion for the majority in that case (as she represented in her email to J.S., Judge Booras would later write the dissent). Moreover, in sending this email, Judge Booras disclosed to a third-party the division's vote in the *Martinez* case, which vote indisputably was confidential information of the Colorado Court of Appeals. And this email was not the first time that Judge Booras had used an inappropriate racial epithet in communicating with J.S. A year earlier, Judge Booras had sent an email to J.S. in which she referred to her ex-husband's new wife, a woman of Navajo descent, as "the squaw."

¶9 At some point in 2018, J.S.'s wife contacted Judge Booras, and Judge Booras disclosed her affair with J.S. Shortly thereafter, J.S. provided to *The Denver Post*, then-Chief Judge Alan Loeb of the Colorado Court of Appeals, then-Governor John Hickenlooper, and, it appears, the Commission and counsel for the plaintiffs in the *Martinez* case several written communications sent to him by Judge Booras during their ten-year relationship. He claimed that these communications called into question Judge

4

Booras's qualifications to serve on the Colorado Court of Appeals, and he requested an investigation.

¶10     Based on the substance of the written materials that he had received, Chief Judge Loeb provided the materials to the Commission, and on March 29, 2018, the Commission filed a motion with this court, pursuant to Rule 34 of the Colorado Rules of Judicial Discipline, requesting that Judge Booras be temporarily suspended with pay pending the disposition of the judicial disciplinary proceedings that had been commenced against her. We granted the Commission's motion and subsequently appointed Chief Judge James F. Hartmann, Chief Judge Pattie P. Swift, and Justice (Ret.) Gregory J. Hobbs, Jr. to serve as special masters in this matter.

¶11     On August 17, 2018, the Commission filed a Notice of Formal Charges and a Statement of Charges against Judge Booras, alleging that she violated the following provisions of the Colorado Code of Judicial Conduct: (1) Canon 1, Rule 1.2 (providing that a judge "shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety"); (2) Canon 3, Rule 3.1(C) (prohibiting a judge from participating in "activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality"); and (3) Canon 3, Rule 3.5 (providing that "[a] judge shall not intentionally disclose or use nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's judicial duties"). These charges were based on Judge Booras's use of racial epithets ("The little Mexican" and "the

5

squaw") and on her disclosure to J.S. of the division's vote in the *Martinez* case one month prior to the division's issuance of its opinion in that case.

¶12    Judge Booras responded to the charges, admitting that she wrote and sent the emails at issue but asserting that they constituted protected speech under the First Amendment. She further contended that she had a reasonable expectation of privacy in the personal, private emails that she sent to her former intimate partner.

¶13    In December 2018, the special masters convened a two-day evidentiary hearing to consider the charges and Judge Booras's responses thereto, and on December 12, 2018, the special masters released their lengthy and comprehensive report. In this report, the special masters concluded that the Commission had proved the charges against Judge Booras, rejected Judge Booras's First Amendment and privacy defenses to those charges, and recommended as a sanction that Judge Booras be removed from office and that she be ordered to pay the costs incurred by the Commission in this matter. The Commission subsequently adopted the special masters' report and recommended to this court that Judge Booras be removed from office and assessed costs. (Notably, at the time of the masters' report and the Commission's recommendation, Judge Booras had not yet tendered her resignation.)

¶14    Thereafter, Judge Booras timely filed exceptions to the Commission's recommendation, and the matter has now been fully briefed. As pertinent here, Judge Booras contends that the Commission erred in applying the standard set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), to reject her claim that her communications with J.S., an intimate partner, should be given First Amendment

6

protection. She further asserts that the recommended sanction of removal from office was too severe under the circumstances.

¶15    In addition, as noted above, by letter dated January 2, 2019, Judge Booras advised the Chief Justice that she was resigning her position as a judge of the Colorado Court of Appeals, effective as of the close of business on January 31, 2019. As also noted above, however, no party has asserted that Judge Booras's resignation has rendered this matter moot.

## II. Analysis

¶16    We begin by discussing our jurisdiction to hear this matter and the applicable standard of review. We then proceed to address Judge Booras's contentions that the communications at issue were protected by the First Amendment and that the recommended sanction of removal from office was too severe under the circumstances.

## A. Jurisdiction and Standard of Review

¶17    Article VI, section 23(3) of the Colorado Constitution entrusts matters of judicial discipline to this court, the Commission, and to any special masters we may appoint in connection with the hearing of a judicial disciplinary matter. This court, however, is the ultimate decisionmaker in judicial disciplinary proceedings. Colo. Const. art. VI, § 23(3)(f); *see also* Colo. R.J.D. 40 (providing that the decision of the supreme court, including such sanctions as may be ordered in a judicial disciplinary matter, shall be final).

¶18    We will uphold the special masters' findings of fact unless, after considering the record as a whole, we conclude that they are clearly erroneous or unsupported by

7

substantial evidence. *See In re Jones*, 728 P.2d 311, 313 (Colo. 1986). We review de novo the special masters' conclusions of law. *See id.*

## B. First Amendment Claim

¶19 Judge Booras does not specifically challenge the special masters' findings that her conduct fell within the prohibitions of Canon 1, Rule 1.2; Canon 3, Rule 3.1(C); and Canon 3, Rule 3.5. She argues, instead, that her conduct was protected under the First Amendment, and we limit our analysis accordingly.

¶20 Judge Booras asserts that the Commission erred as a matter of law in applying the standard set forth in *Pickering* to her First Amendment claim. In her view, *Pickering* is limited to its factual context and is inapplicable to a case like the present one, which involves private communications between intimate partners. She asserts, instead, that a judge's communications with an intimate partner should be given First Amendment protection unless the speech "violates a specific narrowly-tailored rule of judicial conduct or falls within an ordinary exception to the First Amendment." We are not persuaded.

¶21 In *Pickering*, 391 U.S. at 564, a teacher was fired after sending a letter to a local newspaper in which he criticized the way in which the school board and the district superintendent of schools had handled past proposals to raise revenue for the schools. The teacher claimed that his letter was protected by the First and Fourteenth Amendments and that, therefore, the state statute that authorized his dismissal was unconstitutional as applied. *Id.* at 565.

¶22 The Supreme Court ultimately agreed that the teacher's right to freedom of speech was violated. *Id.* In so concluding, the court established what amounts to a two-step

inquiry to be used in evaluating claims of First Amendment violations brought by public employees. *Id.* at 568–73.

¶23    First, a court must determine whether the speech in question addresses "a matter of legitimate public concern." *Id.* at 571. This determination is made in light of "the content, form, and context" of the statement, as revealed by the record as a whole. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). If the statement does not address a matter of legitimate public concern, then the court need not scrutinize the reasons for the governmental action because "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146.

¶24    If, however, the employee's speech addresses a matter of public concern, then the court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. In this regard, the court should consider factors such as "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 570–73).

¶25    For several reasons, we agree with the Commission that *Pickering* provides the appropriate framework for addressing the First Amendment issues that Judge Booras presents here.

¶26    First, *Pickering* correctly recognizes that the "core value" of the Free Speech Clause of the First Amendment is the public's interest in having "free and unhindered debate on matters of public importance." *Pickering*, 391 U.S. at 573. Accordingly, the resolution of a First Amendment issue like that presented here properly turns on whether the subject speech involved a matter of public concern.

¶27    Second, *Pickering* provides an appropriate framework for balancing a judge's right, as a citizen, to free speech against the state's interests in ensuring the fairness and impartiality of its courts, public confidence in those courts, and the proper and efficient functioning of the court system for those working within it. *See Scott v. Flowers*, 910 F.2d 201, 210–13 (5th Cir. 1990) (applying *Pickering* to a case in which a judge claimed, ultimately successfully, that the Texas Commission on Judicial Conduct violated his First Amendment rights by imposing a public reprimand after the judge made statements critical of the county judicial system of which he was a part); *Miss. Comm'n on Judicial Performance v. Boland*, 975 So.2d 882, 890–92 (Miss. 2008) (applying *Pickering* to reject the argument of a judge who had contended that the racist and other derogatory statements that she made at a seminar were protected by the First Amendment); *In re Lowery*, 999 S.W.2d 639, 657–58 (Tex. Rev. Trib. 1998) (applying *Pickering* in a judicial disciplinary proceeding in which a judge was accused of using abusive language and racial slurs in dealing with a parking lot attendant).

¶28 Third, as the *Pickering* Court recognized, "It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal." *Pickering*, 391 U.S. at 570 n.3. No one in this case disputes the need to protect the confidentiality of the judicial decision-making process.

¶29 Having thus determined that the Commission properly relied on the framework set forth in *Pickering* to assess Judge Booras's First Amendment contentions in this case, we must decide whether the Commission properly applied *Pickering* in rejecting Judge Booras's assertion that her comments were entitled to First Amendment protection. We conclude that it did.

¶30 As an initial matter, we agree with the Commission that inappropriate racial epithets and derogatory remarks are not matters of legitimate public concern warranting First Amendment protection. *See Boland*, 975 So.2d at 892; *Lowery*, 999 S.W.2d at 658.

¶31 Although under *Connick*, 461 U.S. at 146, our conclusion in this regard is alone sufficient to defeat Judge Booras's First Amendment claim, we further note that applying the above-discussed factors set forth in *Rankin* and *Pickering* demonstrates that any First Amendment interests that Judge Booras may have had in the communications at issue are outweighed by the state's countervailing interests.

¶32 Specifically, here, unlike in *Pickering*, Judge Booras's use of an inappropriate racial epithet directed at one of her colleagues, as well as her improper disclosure of confidential information to an intimate, non-spousal partner whom Judge Booras had reason to distrust, obviously impaired harmony and trust among her co-workers, and

11

particularly her relationship with the colleague at whom her "little Mexican" comment was directed, who was justifiably shocked and deeply hurt by Judge Booras's comments.

¶33    Similarly, Judge Booras's misconduct had a detrimental impact on the close working relationships with other judges on the court of appeals that are integral to a collaborative decision-making body like that court.

¶34    And were Judge Booras to have returned to the court of appeals, her misconduct could potentially have impeded the performance of both her and her colleagues' duties and could have interfered with the regular operation of the court of appeals. Specifically, besides the above-noted impact to Judge Booras's relationships with her colleagues, Judge Booras's misconduct may have implicated her ability to hear cases involving parties of diverse backgrounds. The knowledge of Judge Booras's racially inappropriate comments could understandably have caused concern among parties of diverse backgrounds, and particularly those of Latino and Native American ancestry, who inevitably would have appeared before Judge Booras were she to have returned to the court of appeals. The judicial system cannot function properly if public confidence in a court is eroded in this way.

¶35    For these reasons, we conclude that the Commission properly relied on *Pickering* in disposing of Judge Booras's First Amendment defense to the charges at issue.

¶36    In reaching this conclusion, we reject Judge Booras's contentions that the Commission erred in relying on *Pickering* and that, instead, the Commission should have determined that a judge's communications with an intimate partner should be given First

12

Amendment protection unless the speech "violates a specific narrowly-tailored rule of judicial conduct or falls within an ordinary exception to the First Amendment."

¶37 In our view, the rule proposed by Judge Booras sweeps too broadly because it would preclude disciplinary action based on communications with a judge's "intimate partner" (however defined) regardless of the extent to which the statements may demonstrate the particular judge's bias or unfitness to serve in office. Judge Booras cites no applicable authority supporting the creation of this type of judicial privilege or immunity, and we are aware of none.

¶38 In any event, even under the rule proposed by Judge Booras, we would conclude that her communications were not constitutionally protected because, in our view, on the specific facts of this case, the Commission properly found that Judge Booras's alleged speech violated Canon 1, Rule 1.2, Canon 3, Rule 3.1, and Canon 3, Rule 3.5 of the Colorado Code of Judicial Conduct.

## C. Appropriate Sanction

¶39 Having thus upheld the Commission's determination that Judge Booras violated several provisions of the Colorado Code of Judicial Conduct, we must determine the appropriate sanction, if any. In this regard, Judge Booras contends that the removal sanction recommended by the Commission is arbitrary and capricious and overly harsh (she does not contest the imposition of costs). She asserts that this court should either accept her resignation and payment of the recommended costs as a sufficient sanction or, alternatively, in light of her resignation, impose only a public censure instead of removal from office.

13

¶40    In recommending that Judge Booras be removed from office, the Commission was justifiably concerned about whether Judge Booras could effectively return to the court of appeals.  At the time the Commission made its recommendation, however, Judge Booras had not yet tendered her resignation.  Given that she has now resigned and is no longer a judge on the court of appeals, we must account for these changed circumstances.  Accordingly, we need not decide—and we express no opinion on—whether the sanction of removal from office was proper in the circumstances presented.  Rather, we proceed to fashion a sanction that comports with both the conduct at issue and the present circumstances.

¶41    Rule 36 of the Colorado Rules of Judicial Discipline provides that when a judge is found to have committed misconduct, the Commission is required to recommend one or more of the following sanctions: (a) removal; (b) retirement; (c) suspension; (d) disability proceedings; (e) public reprimand or censure; (f) diversion or deferred discipline; (g) costs and fees; or (h) any other discipline that will curtail or eliminate the judge's misconduct.

¶42    The "Scope" section of the Colorado Code of Judicial Conduct, in turn, provides that whether discipline should be imposed should depend on factors such as "the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others."  Colo. Code of Judicial Conduct, Scope ¶ 6.

14

¶43 Here, we acknowledge that prior to the matters now before us, Judge Booras had not been subject to any judicial or attorney disciplinary proceedings, that her violations in this case were not motivated by a desire for personal financial gain, and that no concerns had previously been raised with regard to her performance as a judge.

¶44 The violations in this case, however, were serious. As discussed above, Judge Booras's use of inappropriate racial epithets, including one directed at a judicial colleague, and her breaches of trust undermined her ability to continue working with that colleague and, most likely, with many of her colleagues on the court of appeals. In addition, her conduct may have implicated her ability to sit on any case involving ethnic minorities, and particularly those of Latino or Native American descent.

¶45 In light of the foregoing, and recognizing that Judge Booras has now resigned and is no longer a judge on the court of appeals, we conclude that the appropriate sanction in this case is the acceptance of Judge Booras's resignation as a judge of the court of appeals, the imposition of a public censure, and an order that Judge Booras be required to pay the Commission's costs in this proceeding.

### III. Imposition of Sanctions

¶46 For the foregoing reasons, the Court hereby imposes the following sanctions on now-former Judge Laurie A. Booras:

1. The Court accepts Judge Booras's resignation as a judge of the Colorado Court of Appeals, effective at the close of business on January 31, 2019;

15

2.  The Court publicly censures Judge Booras for her violations of Canon 1, Rule 1.2, Canon 3, Rule 3.1, and Canon 3, Rule 3.5 of the Colorado Code of Judicial Conduct; and

3.  The Court orders Judge Booras to pay the costs incurred by the Commission in this matter.

**IT IS SO ORDERED.**